UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Dmitry Pronin, | ) | C/A No. 5:12-cv-03416-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Lieutenant Troy Johnson, Officer | ) | |
| Flournoy, Kenneth Atkinson, Rex Blocker, | ) | |
| John Bryant, Brandon Burkett, Jake | ) | |
| Burkett, Officer Crawford, Daniel Fallen, | ) | |
| Louisa Fuertes-Rasario, Edward Hampton, | ) | |
| William Johnson, Sandra K Lathrop, | ) | |
| Officer Middlebrook, Eda Olivera-Negron, | ) | |
| Henri Wall, Patina Walton-Grier, Officer | ) | |
| Wilson | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a pro se prisoner, brings this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). This matter is before the court on Defendants' Motion to Dismiss, filed on August 21, 2013. ECF No. 68. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Plaintiff, on August 22, 2013, of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 69. On September 24, 2013, Plaintiff filed a response in opposition to Defendants' Motion. ECF No. 72.[1]

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. Because Defendants' Motion is dispositive, the undersigned enters this Report for the district judge's consideration.

I.    Factual Background

Plaintiff is presently confined in the Baltimore County Detention Center, in Towson, Maryland. At the time of the incidents alleged in the Complaint, Plaintiff was incarcerated at the Federal Corrections Institution in Edgefield, South Carolina ("FCI-Edgefield"). Plaintiff filed his initial Complaint on December 3, 2012. ECF 1. Plaintiff filed a First Amended Complaint on February 3, 2013, and a Motion to Amend/Correct First Amended Complaint on February 28, 2013. ECF Nos. 18, 21. Plaintiff's Motion to Amend/Correct First Amended Complaint was granted on April 29, 2013, and Plaintiff's Second Amended Complaint was filed that same day. ECF Nos. 31, 32. In his Amended Complaint, Plaintiff asserts claims for denial of access to the courts, cruel and unusual punishment, and violations of due process, equal protection and retaliation. ECF Nos. 32, 32-1, 32-2. Specifically, Plaintiff contends that he was denied "writing paper, envelopes, and pens," that he was not permitted to exchange his dirty jumper for a clean one, that his multiple requests to repair his leaking sink were ignored, that he was threatened with physical violence on February 7, 2013, that he was denied dinner on February 7, 2013, and that his ability to flush the toilet was temporarily cut off for three days in February 2013. ECF No. 32 at 3-4. Plaintiff seeks compensatory damages, injunctive and declaratory relief. ECF No. 32-1 at 10.

II.    Standard of Review

The Federal Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Motions brought pursuant to Rule 12(b)(1) challenge whether the district court has subject matter jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). In considering a jurisdictional challenge under Rule 12(b)(1), the Fourth Circuit Court of Appeals explained the following:

2

[A] defendant may challenge subject matter jurisdiction in one of two ways. First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. When a defendant makes a facial challenge to subject matter jurisdiction, the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

In the alternative, the defendant can contend . . . that the jurisdictional allegations of the complaint are not true. The plaintiff in this latter situation is afforded less procedural protection: If the defendant challenges the factual predicate of subject matter jurisdiction, a trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding. In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.

[]

. . . But, . . . where the jurisdictional facts are intertwined with the facts central to the merits of the dispute, a presumption of truthfulness should attach to the plaintiff's allegations. In that situation, the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A trial court should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits.

*Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009) (internal citation and quotation marks omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). However, the court is "not required to accept as true the legal conclusions set forth in a plaintiff's

complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.    Analysis

A. *Bivens* Claim

1.    Subject Matter Jurisdiction

Defendants argue that the court lacks subject matter jurisdiction over Plaintiff's *Bivens* claims against Defendants.   ECF No. 68 at 4.   Defendants submit that Plaintiff's

allegations against them are "premised on [their] official duties as staff employed by the [Bureau of Prisons "BOP"]," and that any duty they owed Plaintiff arose from their positions with the BOP and "not from any personal obligations they owe [Plaintiff]." *Id.* Therefore, Defendants contend that Plaintiff's claims against them are in their official, and not individual, capacity. *Id.* In Response, Plaintiff contends that Defendants are being sued in their individual and not official, capacity. ECF No. 72 at 6.

In *Bivens*, the United States Supreme Court established a remedy for plaintiffs alleging constitutional violations by federal officials to obtain monetary damages in suits against federal officials in their individual capacities. 403 U.S. 388 (1971). Based on *Bivens*, courts have recognized that neither federal agencies nor federal officials in their official capacities can be sued for monetary damages in a *Bivens* action. *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (noting "a *Bivens* action does not lie against either agencies or officials in their official capacity"). Rather, a *Bivens* claim can only lie against individual, personally responsible federal officials or employees.

It is clear that a *Bivens* action is not available against agents of the United States sued in their official capacities. *See Doe v. Chao*, 306 F.3d at 184. Accordingly, the undersigned agrees with Defendants that the court is without jurisdiction to consider any actions construed as having been brought pursuant to *Bivens* against Defendants acting in their official capacities. Because Plaintiff purports to have sued Defendants in their individual capacities, the undersigned will further consider Plaintiff's claims.

2.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that

federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion is required for "[a]ll action[s] . . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth v. Churner*, 532 U.S. 731, 741 (2000). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 93-95. "When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

Defendants argue they are entitled to summary judgment because Plaintiff "has not exhausted the Administrative Remedy process established by the BOP relating to any of the allegations set forth in his complaint." ECF No. 68 at 10. In support of this contention Defendants offer an affidavit from Tami Cassaro, Supervisory Attorney for United States Department of Justice BOP, who is currently assigned to the South Carolina Consolidated Legal Center. Cassaro Aff. ¶ 1, ECF No. 68-3. Cassaro attests that she has reviewed BOP records and these records reflect that Plaintiff has not exhausted his administrative remedies concerning the allegation in his Amended Complaint. *Id.* ¶ 6. Cassaro avers that although Plaintiff's Complaints allege that "Defendants Lathrop and Bryant repeatedly came to SHU without any administrative remedy forms [,] [t]here is no evidence that Plaintiff specifically requested and was denied, any administrative remedy forms by his Correctional Counselor, who is responsible for issuing and logging administrative remedy forms issued to inmates." *Id.* ¶ 7. Cassaro attests that Plaintiff "received at least 8 administrative remedy forms in the six months he was at Edgefield" and that Plaintiff failed to exhaust his administrative

remedies for any of those. *Id.* ¶¶ 7-31. Cassaro further contends that there is no evidence Plaintiff "notified the Administrative Remedy Coordinator, Clerk, the Warden, or other Executive Staff that his Unit Team was allegedly denying him administrative remedies." *Id.* ¶ 7.

Plaintiff argues in response that his administrative remedies were not available because, despite numerous requests, he was not able to get administrative remedies forms from his Unit Team. ECF No. 72 at 7. Plaintiff offers affidavits and photocopies of his Requests to John Bryant to show the efforts he took to obtain administrative remedy forms. *Id.* Plaintiff further argues that the administrative remedies referenced in Cassaro's affidavit were filed while he was in general population and are not the subject of this action. *Id.* at 9. Plaintiff admits that he received some BP-10 forms from James Field, A-Unit Team Counselor, but argues that Fields was not able to provide Plaintiff with BP-8 forms, which is the form most grievances start with, because these forms "only can be issued by Counselor of the Unit inmate belonged to prior to SHU." *Id.* Plaintiff argues that under PLRA he is required to exhaust "such administrative remedies as are available," and "there was no remedy forms to state administrative remedies procedure at FCI Edgefield." *Id.* at 10.

Plaintiff offers his own affidavit and attests that he spoke with James Fields, A-Unit Correctional Counselor, on December 3, 2012, January 7, 2013, and April 24, 2013, and complained that Plaintiff had not seen his Correctional Counselor, John Bryant, "for a long time" and that the other members of B-Team Unit did not have administrative remedy forms when they visited Special Housing Unit. Pronin Aff., ECF No. 72-1 at 7, 8, 9. Plaintiff attests that Fields provided him with BP-10 forms, but was not able to give Plaintiff any BP-8 forms. *Id.*

Plaintiff further attests that he spoke with B-Unit Manager Sandra K. Lathrop on September 13, 2012, and told her that he "had not seen B2 Correctional Counselor John Bryant since August 23rd, 2012." Pronin Aff., ECF No. 72-1 at 11. Plaintiff avers that he told Lathrop that Bryant was ignoring his requests for administrative remedies. *Id.* Plaintiff also contends he asked Lathrop for a BP-10 form, and she told him that she did not have any with her. *Id.* Plaintiff attests that he spoke with Lathrop and Correctional Counselor Nathan Mccasline on October 5, 2012 when Plaintiff signed "for the answer to [his] BP9 form, which [he] has earlier filed to the Warden Kenneth Atkinson concerning Central Inmate Monitoring Assignment." ECF No. 72-1 at 12. Plaintiff states that Mccasline also had Warden Atkinson's response to Plaintiff's request concerning his Unit Team's "despeakable [sic] behavior." *Id.* Plaintiff alleges that although one of his complaints to Warden Atkinson was about his Unit Team not having remedy forms, both Mccasline and Lathrop stated to Plaintiff "they did not have any administrative remedies forms with them." *Id.* Plaintiff contends that he told Lathrop that he needed to see John Bryant "with the necessary remedy forms (from BP8 to BP11)" and that when Plaintiff saw Bryant on October 1, 2012, he did not have any remedy forms with him. *Id.* Plaintiff contends that Lathrop told him she would "make sure that John Bryant and Sherylin L. Cheek [B2 Unit Case Manager] come to the SHU, and that they would have remedies forms necessary." *Id.* at 13.

Plaintiff attests that on October 15, 2012, he still had not received the administrative remedy forms he requested from John Bryant. ECF No. 72-1 at 14. Plaintiff attests that he filed written requests to John Bryant on October 15, 16, and 18, 2012, for administrative remedy forms, and as of October 18, 2012, he had not received the requested forms. ECF No. 72-1 at 15.

Plaintiff gave a handwritten Inmate Request to Warden Atkinson on September 12, 2012, concerning John Bryant ignoring Plaintiff's written requests for administrative remedy forms and that no one else on his Unit Team had any remedy forms when they came to SHU. ECF No. 72-1 at 17.   On October 3, 2012, Warden Atkinson forwarded Plaintiff's Inmate Request to his Unit Manager for Review.  ECF No. 72-1 at 18.   Plaintiff also attaches Inmate Request to Staff forms, dated from July to September 2012, requesting BP-8 and BP- 9 forms.  ECF No. 72-1 at 21-28.  The Request to Staff forms offered by Plaintiff do not show any response by FCI-Edgefield staff.   *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has failed to submit sufficient evidence to create a genuine question of fact as to whether his ability to use the FCI-Edgefield grievance system, regarding the allegations contained in his Complaint, was inhibited.   Plaintiff submitted affidavits show that he generally requested administrative remedy forms from July to October 2012, and December, January, and April 2013 and that he was having difficulty in obtaining copies of BP-8s and BP-9s.  Plaintiff's affidavits, however, do not specify what, if any, complaints that Plaintiff was attempting to grieve, and for what time period.   Furthermore, Plaintiff's Amended Complaint addresses purported deprivations that occurred in February 2013, and there is no evidence in the record that Plaintiff requested, and was denied, administrative remedy forms in regard to these incidents.  Therefore, even taking the evidence in the light most favorable to Plaintiff, the record shows that he failed to properly exhaust his remedies. *See Woodford*, 548 U.S. at 90; *Jones,* 549 U.S. at 218. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted.

IV.    Conclusion

For the reasons discussed above, it is recommended that the court grant Defendants'
Motion to Dismiss, ECF No. 68, and that Plaintiff's Complaint be dismissed.  If the district
court adopts this recommendation, Plaintiff's Motion to Stay, ECF No. 75, will be moot.

IT IS SO RECOMMENDED.


January 13, 2014                                                Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**