UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Dmitry Pronin, | ) | C/A No. 5:12-03416-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lieutenant Troy Johnson, Officer | ) | Report and Recommendation |
| Flournoy, Kenneth Atkinson, Rex Blocker, | ) | |
| John Bryant, Brandon Burkett, Jake | ) | |
| Burkett, Officer Crawford, Daniel Fallen, | ) | |
| Louisa Fuertes-Rasario, Edward Hampton, | ) | |
| William Johnson, Sandra K Lathrop, | ) | |
| Officer Middlebrook, Eda Olivera-Negron, | ) | |
| Henri Wall, Patina Walton-Grier, Officer | ) | |
| Wilson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a pro se prisoner, brings this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). This matter is before the court on Defendants' Motion for Summary Judgment, filed on May 27, 2014. ECF No. 108. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Plaintiff, on May 28, 2014, of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 109. On June 16, 2014, August 4, 2014, and August 18, 2014, Plaintiff filed Responses in Opposition to Defendants' Motion. ECF Nos. 117, 137, 139.[1]

I.    Background

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. Because Defendants' Motion is dispositive, the undersigned enters this Report for the district judge's consideration.

Plaintiff is presently confined in the Baltimore County Detention Center in Towson, Maryland. At the time of the incidents alleged in his Complaint, Plaintiff was incarcerated at the Federal Corrections Institution in Edgefield, South Carolina ("FCI-Edgefield"). Plaintiff filed his initial Complaint on December 3, 2012. ECF No. 1. Plaintiff filed a First Amended Complaint on February 3, 2013, and a Motion to Amend/Correct First Amended Complaint on February 28, 2013. ECF Nos. 18, 21. Plaintiff's Motion to Amend/Correct First Amended Complaint was granted on April 29, 2013, and Plaintiff's Second Amended Complaint was filed that same day. ECF Nos. 31, 32.

In his Complaint, Plaintiff asserts claims for denial of access to the courts, cruel and unusual punishment, violations of due process and equal protection, and for retaliation. ECF No. 1. Plaintiff filed and attached an affidavit to his Complaint. *See* ECF No. 1-1. In his Amended Complaint, Plaintiff specifically names fifteen Defendants and indicates their respective positions and places of employment.  ECF No. 18 at 1-4. Thereafter, Plaintiff asserts specific claims against each named Defendant in numbered order. *See id.* at 5-9. Finally, Plaintiff requests compensatory damages of varying amounts and injunctive relief depending on the cause of action. *Id.* at 10. In his Second Amended Complaint, Plaintiff contends that he was denied "writing paper, envelopes, and pens," that he was not permitted to exchange his dirty jumper for a clean one, that his multiple requests to repair his leaking sink were ignored, that he was threatened with physical violence on February 7, 2013, that he was denied dinner on February 7, 2013, and that his ability to flush the toilet was temporarily cut off for three days in February 2013. ECF No. 32 at 3-4. Plaintiff seeks compensatory damages, injunctive and declaratory relief. ECF No. 32-1 at 10.[2]

---

[2] Previously, on January 13, 2014, the undersigned recommended that the court grant Defendants' Motion to Dismiss based on Plaintiff's failure to exhaust his administrative

II.    Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).  Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248.

---

remedies pursuant to the Prison Litigation Reform Act ("PLRA"). *See* ECF No. 78. However, on March 25, 2014, the court rejected the undersigned's recommendation. *See* ECF No. 84. Specifically, the court found: "Viewing the evidence in the light most favorable to Pronin, the court finds that there is a genuine issue of material fact as to whether defendants hindered Pronin's ability to obtain grievance forms. Therefore, summary judgment is not appropriate on the basis that Pronin failed to exhaust his administrative remedies." *Id.* at 5. Accordingly, the case was remanded to the undersigned for further consideration of Defendants' other arguments in favor of dismissal. *See id.* These other non-exhaustion arguments are considered herein.

Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.     Analysis

Defendants filed a Summary Judgment Motion arguing that they are entitled to judgment as a matter of law as to all of Plaintiff's claims.  Defendants first maintain that Plaintiff has failed to state a claim upon which relief can be granted. ECF No. 108 at 34-35. However, for the issues discussed below, the undersigned has reviewed the pleadings and finds that Plaintiff has articulated sufficient facts to overcome a challenge based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, the undersigned will address in turn each of Defendants' remaining arguments regarding Plaintiff's claim for (1) denial of access to courts, (2) retaliation, (3) violation of due process, (4) deliberate indifference to medical needs, (5) conditions of confinement/cruel and unusual punishment, (6) equal protection violation, and (7) supervisory liability.

A.     Access-to-Courts

Defendants argue that Plaintiff has failed to state a cause of action under § 1983 concerning his access-to-court claims because he has no constitutional right regarding the grievance procedure. ECF No. 108 at 37-38. Additionally, Defendants maintain that Plaintiff has failed to demonstrate that he suffered an actual injury resulting from an alleged denial of access to courts concerning his legal claims. *Id.* at 38-39. In his Response, Plaintiff does not identify a particular case where he has been prejudiced based on denial of access to courts.

*See* ECF Nos. 117, 137. Rather, Plaintiff refers the court to his exhibits which he argues demonstrate that Unit Team members did not come to SHU with grievance forms. ECF No. 137 at 1; 137-1. Later, Plaintiff maintains that he was denied stamps and administrative remedy forms in SHU. *Id.* at 9, 12. Further, Plaintiff contends that some of his legal property was destroyed or lost. *Id.* at 10-11; 14.

The undersigned finds that Plaintiff's claims concerning grievance procedures within FCI-Edgefield are without merit.  Inmates do not have a constitutionally protected right to a grievance procedure within the prison system under the Due Process Clause, or any other statute. *See Daye v. Rubenstein,* 417 F. App'x. 317, 319 (4th Cir. 2011) ("[P]risoners do not have a constitutional right of access to the grievance process."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (finding "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Patel v. Moron*, 897 F. Supp. 2d 389, 402 (E.D.N.C. 2012) (finding no right to a grievance procedure in a *Bivens* context). Thus, there is no constitutional right to file a grievance, nor is there a constitutional right to have a grievance timely determined within the prison system.

In his Complaint and Amended Complaints, Plaintiff claims he was deprived access to courts based on the following specific facts:  (1) his legal paperwork, including legal addresses, have been lost, stolen, damaged, or unlawfully withheld; (2) denial of an opportunity to appeal a Disciplinary Hearing Officer ("DHO") decision; (3) his intention to file a 2255 Post-Conviction Relief ("PCR") motion and "running out of time to file 2255 Post-Conviction Relief Motion to the U.S. District Court for Delaware;" (4) his Unit Team's failure to fill out and file a Financial Certificate on his behalf; (5) denial of legal addresses and access to the electronic law library; (6) paperwork related to his § 2255 habeas motion

was not returned to him along with other paperwork; and (7) denial of his requests for stamps, legal envelopes, return of property, writing paper, pens, and legal forms. Based on these facts, Plaintiff attests that he was unable to timely file a § 2241 habeas motion, a petition for PCR, and an appeal on a DHO decision. ECF No. 1-1 at 13.

With regards to Plaintiff's allegations of denial of access to courts concerning his legal claims, the undersigned finds that Plaintiff has failed to make a prima facie case. The right of access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996).  In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must demonstrate with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.  The *Lewis* Court reasoned that the requirement that an inmate "show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.* at 349.

Here, Plaintiff maintains that he was unable to timely file a § 2241 habeas motion and a PCR petition. However, Plaintiff did not present any evidence that he suffered those specific injuries as a result of his alleged denial of access to court. Rather, he alleged only that he was "running out of time to file 2255 Post-Conviction Relief Motion to the U.S. District Court for Delaware." ECF No. 1 at 2. Furthermore, Plaintiff alleges that his Unit

Team refused to fill out and file a Financial Certificate on his behalf. However, Plaintiff's exhibits demonstrate that he was given a blank Financial Certificate and was instructed to fill out the portion requesting "name, number, place of confinement, and signature." ECF No. 1-3 at 3. Defendant Lathrop indicated to Plaintiff that he would complete the form upon receipt and return it to Plaintiff. *See id.* Therefore, evidence demonstrates that Defendants did not refuse to assist Plaintiff in completing his Financial Certificate. Furthermore, Plaintiff has not demonstrated that he was unable to file or proceed with a claim because of an incompleted or unfiled Financial Certificate. Accordingly, Plaintiff has failed to demonstrate that he was injured as a result of Defendants' alleged non-cooperation in completing or assisting Plaintiff with his Financial Certificate. *Lewis*, 518 U.S. at 353–55.

Plaintiff alleges that Defendants prevented him from filing an appeal on a DHO decision and maintains that he was required to file a copy of the DHO report with his appeal but could not. However, in an affidavit he filed with the court, Plaintiff attests that he received the DHO report on November 14, 2012. ECF No. 1-1 at 9-10. Additionally, Plaintiff indicated that the legal paperwork pertaining to his DHO action was found and returned to him. *Id.* at 7. It appears that Plaintiff had the paperwork he needed to file his appeal, and Defendants demonstrated that Plaintiff in fact filed an appeal concerning the DHO decision on December 4, 2012. ECF No. 108 at 40. Accordingly, Plaintiff has failed to demonstrate, as required by *Lewis*, 518 U.S. at 353–55, that he suffered an actual injury concerning any action Defendants took relating to his DHO action.

Plaintiff also alleges that Defendants lost, stole, or damaged his legal property. Plaintiff's claims concerning the disappearance of or damage to his legal property must fail because allegations of a correctional officer's negligence alone will not support such a cause

of action. *See Pink v. Lester,* 52 F.3d 73 (4th Cir. 1995) (holding negligent denial of access to the courts is not actionable under § 1983."); *Wise v. Lexington Cnty. Sheriff's Dep't*, No. 4:06-cv-1842-RBH-TER, 2008 WL 551618, at *5 (D.S.C. Feb. 26, 2008) *aff'd*, 283 F. App'x 155 (4th Cir. 2008) ("Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts."). Alternatively, again, Plaintiff has failed to demonstrate with specificity how he was injured as a result of any alleged intentional conduct by a correctional officer concerning his legal paperwork. *Lewis*, 518 U.S. at 353–55.

Finally, Plaintiff repeatedly argues that legal forms, envelopes, pens, stamps, and other supplies have not been made available to him. However, other courts have held that there is "no independent constitutional right to library access, legal supplies, or legal assistance." *Cobb v. Ozmint*, No. 0:08-3978-HFF-PJG, 2010 WL 2943073 (D.S.C. July 1, 2010), *report and recommendation adopted*, No. 0:08-3978-HFF, 2010 WL 2990013 (D.S.C. July 27, 2010); *see also Lewis*, 518 U.S. at 351 (observing the established a right of access to the courts, not a right to a law library or legal assistance). Therefore, in arguing that certain legal forms are not always made available to him, Plaintiff has failed to demonstrate that a genuine issue of material fact for trial exists.

Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment concerning Plaintiff's allegations of denial of access to courts either because Plaintiff has failed put forth evidence that a genuine issue of material fact for trial exists or because Plaintiff has failed to demonstrate he suffered an actual injury based on Defendants' alleged actions or inactions. *Lewis*, 518 U.S. at 351–52; *Cochran,* 73 F.3d at 1317.

B.    Retaliation

Defendants argue that Plaintiff's claim for retaliation should fail as a matter of law because Plaintiff has only made "bare assertions of retaliation" and only made vague and conclusory references that Defendants' actions or inactions were retaliatory in nature. ECF No. 108 at 46. Plaintiff does not respond specifically to Defendants' summary judgment argument concerning retaliation.

In his Complaint, Plaintiff alleges that he was "treated like an animal" and denied access to courts for retaliatory reasons. ECF No. 1 at 2. Later, Plaintiff specifically alleges that retaliation and conspiracy took place when certain Defendants turned off Plaintiff's water and light for more than four hours on October 28, 2012. ECF No. 1-1 at 6. However, Plaintiff later attests that the main reason the guard turned off the water and lights was because "somebody from our cell threw a tray at him." ECF No. 1-2 at 1. In his first Amended Complaint, Plaintiff alleges that Defendant Jake Burkett "maliciously and deliberately left [Plaintiff's] legal paperwork in cell 236 for another 6 (six) hours, so that [his] paperwork was mostly ruined by [his] then-cellmate of cell 236." ECF No. 18 at 7. Additionally, Plaintiff claims that Defendant Brandon Burkett, "in retaliation on behalf of his elder brother Jake Burkett, on [November 20, 2012] wrote [him] an incident report where he claims that on [October 28, 2012] (!) [Plaintiff] pressed an emergency button without purpose and thus alternated (sic) a life-safety device." *Id.*

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). Finally, a plaintiff must show that he

suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran*, 73 F.3d at 1317; *Adams v. Rice*, 40 F.3d at 74.

Here, each of Plaintiff's retaliation claims fail as a matter of law because Plaintiff does not contend that actions or inactions taken by Defendants were in response to his exercise of a constitutionally protected right as required under the second prong of the *Jones* test. 188 F.3d at 324–25. For example, Plaintiff alleges that he was treated like an animal and denied access to courts "for the reasons of retaliation" rather than alleging that the adverse treatment towards him was happening because he was exercising his right to file a PCR or was exercising some other constitutionally protected right. ECF No. 1 at 2. Moreover, Plaintiff acknowledges that Defendants' actions of turning off his water and light for more than four hours on October 28, 2012, occurred because "somebody from our cell threw a tray" and was not in reaction to Plaintiff's exercise of a constitutionally protected right. ECF No. 1-2 at 1. Plaintiff's own assertions indicate that his claim concerning deprivation of water and light also fails the second prong of the retaliation test. Therefore, Plaintiff has failed to allege or demonstrate the intent prong of the retaliation test concerning any of his claims.

Plaintiff's claims concerning retaliatory denial of access to courts also fail because Plaintiff has failed to demonstrate that an adverse effect occurred because of the Defendants' alleged retaliatory actions. As indicated in the above section concerning denial of access to

courts, the undersigned determined that Plaintiff failed to present evidence that Defendants'

actions hindered his efforts to pursue a legal claim. *See American Civil Liberties*, 999 F.2d at

785. For the same reason, Plaintiff's claim that Defendants damaged his legal paperwork as

an act of retaliation fails.  Similarly, Plaintiff's claim against Defendant Brandon Burkett for

writing an incident report fails to state a cause of action because Plaintiff maintains that he

was "found not guilty on that incident report by Disciplinary Hearing [Officer] Raymond

Kelso." ECF No. 18 at 7. Therefore, Plaintiff has failed to demonstrate he suffered an

"adverse effect" or injury as a result of Defendant Burkett's alleged retaliatory conduct.

Accordingly, the undersigned recommends granting Defendants' Motion on

Plaintiff's retaliation claims because Plaintiff has failed to state a claim of retaliation under

either the second or third prong of the *Jones*' test.

C.    Due Process Violation

Defendants maintain that Plaintiff's purported causes of action concerning violations

of his due process rights should be dismissed because Plaintiff has failed to exhaust his

administrative remedies concerning these claims. ECF No. 108 at 53.[3] Alternatively,

Defendants argue Plaintiff's due process claims should be dismissed because they are in

violation of *Heck v. Humphrey*, 512 U.S. 477 (1997). *Id.* at 53-54.

In his Complaint, Plaintiff alleges that a violation of due process of law took place

when he received copies of incident reports concerning his suicide attempts more than 24

hours after the incidents happened.[4] ECF No. 1-1 at 10.

---

[3] Plaintiff does not address Defendants' exhaustion argument. However, based on the court's
prior instruction on remand, the undersigned will not consider the exhaustion requirement
here.
[4] To the extent Plaintiff's Complaint can be construed to allege a violation of due process
regarding his inability to appeal a DHO decision, the undersigned finds that Plaintiff has
failed to demonstrate that he was deprived of life, liberty, or property.  As previously found,

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "In determining whether state officials have deprived an inmate, [] of a procedurally protected 'liberty,' this Court traditionally has looked either (1) to the nature of the deprivation (how severe, in degree or kind) or (2) to the State's rules governing the imposition of that deprivation (whether they, in effect, give the inmate a 'right' to avoid it)." *Sandin v. Conner*, 515 U.S. 472, 493 (1995). "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

Plaintiff's claim that a due process violation occurred when he untimely received incident reports in violation of Bureau of Prisons ("BOP") Policy Statement, fails as a matter of law. Due process affords Plaintiff the right to receive notice of the charges against him at least 24 hours prior to a *hearing* concerning charges against him. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) (holding an inmate is entitled to the following: (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) written findings as to the evidence relied upon and reasons for the disciplinary action; and (3) the right to call witnesses and present evidence in his defense, provided there is no undue hazard to institutional safety or correctional goals). Due process does not require that Plaintiff receive notice of an incident report within 24 hours of the incident, though this may be a policy within the BOP.

---

Plaintiff had the paperwork he needed to file his appeal, and Defendants demonstrated that Plaintiff in fact filed an appeal concerning the DHO decision on December 4, 2012. ECF No. 108 at 40. Moreover, the due process clause is not implicated to the extent Plaintiff alleges prison officials officers were responsible for Plaintiff's missing legal documents. *See e.g.*, *Daniels v. Williams,* 474 U.S. 327 (1986) (holding the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property); *see also Pink v. Lester,* 52 F.3d 73, 75 (4th Cir. 1995).

If Plaintiff's challenge regarding the incident reports is, as Defendant interprets it, a challenge to his confinement, then his claim fails under *Heck v. Humphries*, 512 U.S. 477. In *Heck*, the plaintiff filed a § 1983 action while his direct appeal from an Indiana conviction was still pending. *Id.* at 479-80. There, the Supreme Court found that that Heck's claim for damages pursuant to his § 1983 was properly dismissed because "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90. The *Heck* holding was extended to the context of inmate disciplinary convictions in *Edwards v. Balisok*, 520 U.S. 641 (1997). Here, there is no evidence that Plaintiff's incident reports have been overturned, expunged, or otherwise invalidated. Therefore, Plaintiff's § 1983 challenge concerning denial of due process with respect to his incident reports is barred.

Accordingly, the undersigned recommends granting Defendants' Motion on Plaintiff's due process claims.

### D.     Deliberate Indifference to Medical Needs

Defendants maintain that Pronin's allegations of medical indifference should be dismissed because he has failed to provide any evidence demonstrating that he suffered from a serious or life threatening medical condition, and he received prompt and accurate medical care for all of his medical needs. ECF No. 108 at 57. Furthermore, Defendants argue that Plaintiff cannot demonstrate that Defendants acted with deliberate indifference to his serious medical needs. *Id.* at 69-70. In response, Plaintiff maintains that he waited for two months to be seen by Defendant (Doctor) Blocker for seizure activities and was seen by him only on the day Plaintiff has an actual seizure and fell from the top bunk. ECF No. 137 at 3. Additionally, Plaintiff contends that Defendant (Nurse) Patina Walton-Geer showed

deliberate indifference by denying Plaintiff a sick-call procedure. *Id.* Finally, Plaintiff argues that whether he needed prescription medication or a referral to a psychiatrist is a disputed question of fact that Plaintiff raises in rebuttal. *Id.* at 15.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In his Complaint, Plaintiff alleges he entered the SHU after a sexual assault occurred for which he did not receive proper psychological help. ECF No. 1-1 at 2. In his first Amended Complaint, Plaintiff alleges that Defendant Blocker "failed to see [Plaintiff] as a chronic care clinic patient for almost a year, falsified [his] medical record by placing wrong reason for [his] neurologic condition (nervous neck tick), ignored [Plaintiff's] requests to correct the situation, ignored the situation with [his] eye infection, and [his] seizure-like activity." ECF No. 18 at 5. Additionally, Plaintiff alleges that Defendant Louisa Fuertes-Rosario, Health Services Administrator, "failed to correct the false reasoning for [his] neurological condition (nervous neck tick), ignored [his] requests to her pertaining to the situation." *Id.* at 6. Finally, Plaintiff maintains that on November 27, 2012, Defendant Patina Walton-Geer refused to either take a sick call from Plaintiff concerning his eye infection or give him a blank form for a sick call. *Id.* at 8.

The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care. Further, the record before the court reveals that Plaintiff was initially examined by Defendant Blocker on January 18, 2013. Blocker Decl., ECF No. 108-11 at 2, Pl. Med. R., 108-13. Upon examination, Defendant Blocker agreed with a diagnosis in Plaintiff's medical history indicating that he had an unspecified type of epilepsy. ECF No. 108-11 at 2-3. Additionally, Defendant Blocker addressed Plaintiff's psychological issues and diagnosed Plaintiff with an unspecified psychosis and ordered a comprehensive blood work-up. *Id.* at 3. Defendant Blocker also examined Plaintiff's neck and found that he had full range of motion. *Id.* Results of an x–ray of Plaintiff's neck were

negative for any abnormalities, and the medical records indicate that Plaintiff has minor chronic neck pain. *Id.* at 8.

Thereafter, Plaintiff saw Psychology staff for an intake screening, and the staff referred Plaintiff for a telepsychiatry session. *Id.* at 4. Plaintiff agreed to a plan that would be monitored by Psychology staff quarterly. *Id.* On March 7, 2012, Plaintiff agreed to take two anti-depressant medications. *Id.* Subsequently, Plaintiff stopped taking the medications at his own request. *Id.* Plaintiff continued to be treated for his mental health conditions and saw Defendant Blocker on February 22, 2013. *Id.* at 6-7.

Plaintiff was seen and treated twice for his eye problems, on December 4, 2012, and December 30, 2012, respectively. *Id.* at 5-6. Defendant Blocker averred that after these incidents, Plaintiff did not complain about problems with his eyes again. *Id.* at 6. Evidence also demonstrates that Plaintiff was treated for seizure-like symptoms on February 16, 2013, February 22, 2013, and on March 26, 2013. *Id.* at 6-8; ECF No. 108-12 at 79-89, 112-17. Overall, medical records indicate that Plaintiff was seen 44 times in 16 months for various medical reasons. ECF No. 108-11 at 9; *see also* ECF Nos. 108-12, 108-13.

Plaintiff argues that whether he needed prescription medication or a referral to a psychiatrist is a disputed question of fact. ECF No. 137 at 15. Although Plaintiff may disagree with the amount of treatment he received or may object to the care that the medical staff gave him, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). Regarding Plaintiff's claim against Defendant Nurse Walton-Geer, the medical records that were produced indicate that Plaintiff only complained of and was seen

for eye infections on two occasions—never by Defendant Walton-Geer.  ECF No. 108-12 at 68-69, 72-73. The medical records also show that on November 27, 2012, the day he alleges Nurse Walton-Geer refused him a sick call, he was counseled and received a care plan from health services. ECF No. 108-13 at 8. Plaintiff's claim against Fuertes-Rasario must fail as well because she did not provide direct medical care to Plaintiff and averred she has "no authority or duty to overrule the professional and informed decisions made by physicians." ECF No. 108-15 at 1. If Plaintiff is seeking to hold Defendant Fuertes-Rasario liable under a theory of supervisory liability, his claim must also fail. *See Ashcroft v. Iqbal,* 556 U.S. 662, 693 (2009) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely."); *Fox v. Drew*, No. 8:12-421-MGL-JDA, 2013 WL 4776706, at *11 (D.S.C. Sept. 4, 2013) (holding that a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms and requiring a plaintiff establish "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices[ ]'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff" to prevail under *Bivens* or § 1983 on a theory of supervisory liability).

 To the extent Plaintiff argues that the medical staff subjectively failed to treat or alleviate his "extreme pain and suffering," such a claim is more akin to a claim of neglect or

malpractice and does not meet the standard for a plausible claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). As the *Wright* court articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Id.* (internal citations omitted). Here, at best, Plaintiff's claim amounts to medical malpractice and is not a proper § 1983 claim. *See id.* The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Rather, the record demonstrates that FCI-Edgefield medical personnel were aware of each of Plaintiff's medical conditions, concluded they were not life threatening, and treated Plaintiff for his conditions. Thus, Plaintiff has failed to demonstrate he is at risk based on his medical state. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claims.

> E.    Conditions of Confinement and Cruel and Unusual Punishment

Defendants maintain that Plaintiff has provided nothing more than conclusory allegations that are devoid of evidence that he was subjected to unconstitutional living conditions and such allegations do not amount to constitutional violations. ECF No. 108 at 74. Additionally, Defendants maintain that Plaintiff's allegations do not show he was deprived of a basic human need that was objectively serious or that Defendants acted with a sufficiently culpable state of mind to satisfy a cause of action for cruel and unusual punishment. ECF No. 108 at 77. In his Response, Plaintiff argues that Defendants do not specifically deny that they failed to remove the urinal and feces basin from his observation

cell on November 12-13, 2012, and therefore they forced Plaintiff to eat in filthy conditions. ECF No. 137 at 2.

In his Complaint, Plaintiff alleges that Defendants, specifically Defendant Johnson, did not remove a bathroom container from Plaintiff's cell prior to handing out lunch trays and later did not remove the container after lunch was over. ECF No. 1-1 at 8. Additionally, Plaintiff alleges that Defendants turned off the lights and water in the cell range where he was housed so that he was deprived of light and water for more than four hours. ECF No. 1-2 at 1. In his Second Amended Complaint, Plaintiff alleges that Defendants created filthy prison conditions by failing to exchange prisoners' jumpers for more than a month, cutting off the toilet flush in cell 135 for three days, and in ignoring Plaintiff's request to repair a leaking sink. ECF No. 32 at 3. Finally, Plaintiff maintains that he was denied dinner on February 7, 2013. *Id.* at 3-4.

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 F. App'x. 348, 353 (4th Cir. 2012).

Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care. . . ." *Farmer*, 511 U.S. at 832. Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim."). "In order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

First, Plaintiff has failed to state a claim for an Eighth Amendment violation concerning his claim that Defendants failed to remove his portable toilet during mealtime which created filthy cell conditions. Only prolonged or severe sanitation issues can support an Eighth Amendment violation claim. *See Rish v. Johnson,* 131 F.3d 1092, 1096 (4th Cir. 1997) ("Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."); *Hooks v. Chapman*, No. 0:12-2416-GRA-PJG, 2012 WL 6674494 (D.S.C. Nov. 30, 2012) *report and recommendation adopted*, 0:12-CV-02416-GRA, 2012 WL 6674491, at *1 (D.S.C. Dec. 21, 2012) ("Plaintiff's claim that he was only temporarily denied access to a bathroom and had to wait for a clean jumpsuit, while undoubtedly uncomfortable, did not rise to the level of an Eighth Amendment violation. Plaintiff's claim cannot be said to be a "severe or prolonged" deprivation of a basic human need."); *Ajaj v. United States*, 479 F. Supp. 2d 501, 541 (D.S.C.

2007) (finding an Eighth Amendment violation occurs when a prisoner is subjected to lack of sanitation that is severe or prolonged); *compare with McCray v. Burrell,* 516 F.2d 357, 366–69 (4th Cir. 1974) (prisoner placed naked in a bare, concrete cell with excrement-encrusted pit toilet for 48 hours without no bedding, sink, washing facilities, or personal hygiene stated a claim). Therefore, Plaintiff's claim that on one occasion he was forced to eat a meal in "filthy" living quarters, or refused to eat a meal because of the alleged filthy conditions, was a temporary condition of limited duration which does not amount to a violation of the Eighth Amendment.

Similarly, Plaintiff's claim that Defendants' deprivation of light and water for four hours also does not rise to the level of cruel and unusual punishment.  Additionally, as required by *Strickler*, Plaintiff has failed to produce evidence of a serious or significant physical or emotional injury resulting from these challenged conditions. 989 F.2d at 1381. Plaintiff's claim fails because a four-hour deprivation is not an "extreme" deprivation of light or water necessary to satisfy the objective and "serious deprivation of a basic human need" test. *Id.* at 1379; *see also Williams v. Padula*, No. 2:10-2707-CMC-BHH, 2011 WL 5025321 (D.S.C. Oct. 21, 2011) (holding plaintiff failed to show a constitutional violation occurred when he was deprived of light in his cell for three days); *Gibert v. Anderson Cnty. Sheriff's Office*, No. 0:06-1853-DCN-BM, 2007 WL 328840 (D.S.C. Feb. 5, 2007) ("The mere fact that Plaintiff did not have running water in his cell for a period of time does not amount to a constitutional violation."). Therefore, Plaintiff's claim fails to state a cause of action for an Eighth Amendment violation.

Turning to Plaintiff's allegation that his prison jumper was not exchanged for over a month, the undersigned finds that Plaintiff has failed to put forth any evidence to support this

allegation. On the contrary, Defendants have demonstrated that inmates' jumpers are exchanged weekly. ECF Nos. 108-17, 108-33, 108-34. Specifically, Defendant Officer Wilson averred that he exchanged inmates' jumpsuits on a weekly basis, including Plaintiff's jumpsuit. *See* ECF No. 108-33 at ¶ 6. Moreover, Defendant Wilson stated that he "never waited a month to exchange out inmate jumpers for any inmate, including [Plaintiff]." *Id.*

Plaintiff also alleges his cell was in a "filthy condition" because the toilet flush was turned off for three days and his requests to fix a leaking sink were ignored. ECF No. 32 at 3. In this case, Plaintiff's allegations that he was deprived of a flushable toilet and a sink that did not leak are insufficient to set forth a constitutional claim because Plaintiff has failed to present any evidence showing his basic needs were not met, that he was forced to endure the alleged unsanitary conditions for extended periods, or that he suffered any injury. *Strickler,* 989 F.2d at 1382. Therefore, the undersigned finds that Plaintiff has failed to demonstrate a constitutional deprivation based on these allegations.

Finally, the alleged missed dinner that Plaintiff claims took place on February 7, 2012, does not rise to the level of a constitutional violation because Plaintiff has not alleged that the one missed meal caused an adverse effect. *Harrison v. Stallings,* 898 F.2d 145, 1990 WL 27233 (4th Cir. 1990) (district court dismissed claims as to cold food in insufficient quantities where the plaintiff made no factual allegation of adverse effects caused by the condition of the food). Moreover, one alleged missed meal is not enough to amount to a constitutional violation. *See Ford v. Board of Managers of New Jersey State Prison*, 407 F.2d 937, 939 (3d Cir. 1969) (finding prisoner's diet limited to "4 slices of bread and a pint of

water 3 times daily," with "one 'full' meal every third day" was not "cruel and unusual punishment").

Accordingly, the undersigned recommends granting Defendants' Motion on Plaintiff's conditions of confinement claims.

F.    Equal Protection Violation

Defendants argue that Plaintiff's purported claim for an equal protection violation should fail because his case does not involve a fundamental right and Plaintiff does not allege that he is a member of a suspect class.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* A prisoner can make an equal protection claim if he is singled out as an individual for "arbitrary and irrational treatment," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000); *Willis v. Town of Marshall, N.C.,* 426 F.3d 251, 263 (4th Cir. 2005). When equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002). In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result

23

of intentional or purposeful discrimination," and the court must determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Id.*

Here, Plaintiff claims that he was treated differently than his Spanish-speaking cellmate. However, Plaintiff has not offered any evidence that he was treated differently as a result of intentional discrimination. Rather, Plaintiff merely makes bald allegations regarding discrimination without any support which are insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). Accordingly, the undersigned recommends granting Defendants' summary judgment motion concerning Plaintiff's discrimination claim.

### G.    Supervisory Liability

Defendants contend summary judgment is proper because Plaintiff suffered no constitutional injury from Defendants Atkinson and Fallen who were FCI-Edgefield administrators at the time of the incidents alleged in Plaintiff's Complaint. ECF No. 108 at 83. Additionally, Defendants maintain that Plaintiff's cause of action against Defendant Flournoy should fail because verbal threats do not infringe on a Plaintiff's constitutional rights. *Id.* at 83-85.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate

indifference or tacit authorization of the offensive practices. *Id.*; *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

In his Complaint, Plaintiff alleges that "Kenneth Atkinson, the Warden, failed to lead and supervise staff members of the Institution, Warden of which he was entrusted to be, and allowed violations of Constitutional rights under 1st, 5th, 8th, and 14th Amendments to Constitution to happen, namely:

    a)  Failed to take a decisive action upon receiving written requests concerning B Unit Staff Members coming to SHU without any remedy forms (BP 8, 9, 10 and 11 administrative remedy forms); failure to react on any other violation.

    b)  Failed to supervise and direct staff members in case of Kenneth Atkinson means allowing violations under 1st, 5th, 8th, [and] 14th Amendments to Constitution to continuously thrive in the Institution."

ECF No. 18 at 5. Plaintiff specifically claims that Daniel Fallen "failed to react upon receiving the information from [him] concerning C.O. Brandon Burkett gravely violating 8th Amendment rights (Cruel and Unusual Punishment) by cutting off water [and] light in cell 136 on October 28, 2012. Failing to react on grave violation from C.O. Burkett, which happened on 10/28/2012, Fallen allowed it to unpunished, as well as violation of 5th and 14th Amendments, thus participating in above violations himself. (Please see count 9-'Brandon Burkett')." *Id.*

Plaintiff failed to show facts that establish any correctional officer or staff member deprived him of a constitutionally-protected right. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of any correctional employee.  To the extent Plaintiff attempts to rely on the doctrine of supervisory

liability to hold Defendants liable on his claims, the undersigned recommends that summary judgment be granted to Defendants Atkinson and Fallen as to this claim.

In his Complaint, Plaintiff maintains that Officer Flournoy "threatened [him] with physical violence at around 6:40 p.m. on 02/07/2012. . . ." ECF No 32 at 4. However, verbal abuse or physical threats alone do not rise to the level of a constitutional violation. *See e.g., Paul v. Davis*, 424 U.S. 693, 703 (1976) (where the Supreme Court ruled that verbal assaults and threats do not state a constitutional claim actionable under 42 U.S.C. § 1983); *Kollyns v. Hughes*, No. 3:05-90-JFA-JRM, 2006 WL 2716407, at *8 (D.S.C. Sept. 22, 2006) *aff'd*, 258 F. App'x 606 (4th Cir. 2007) (finding threats and comments alone do not rise to the level of a constitutional violation). Accordingly, the undersigned recommends granting Defendant's Motion for Summary Judgment on Plaintiff's cause of action against Defendant Flournoy for allegedly threatening him.

### H.     Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 108 at 35-37. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at

the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 108, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

September 5, 2014                                    Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**