**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| DMITRY PRONIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:12-c v-03416-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| LT. TROY JOHNSON, OFFICER | ) | |
| FLOURNEY, KENNETH ATKINSON, | ) | |
| REX BLOCKER, JOHN BRYANT, | ) | |
| BRANDON BURKETT, JAKE | ) | |
| BURKETT, OFFICER CRAWFORD, | ) | |
| DANIEL FALLEN, LOUISA FUERTES- | ) | |
| RASARIO, EDWARD HAMPTON, | ) | |
| WILLIAM JOHNSON, SANDRA K. | ) | |
| LATHROP, OFFICER MIDDLEBROOK, | ) | |
| EDA OLIVERA-NEGRON, HENRI | ) | |
| WALL, PATINA WALTON-GRIER, | ) | |
| and OFFICER WILSON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Magistrate Judge Kaymani D. West's Report and Recommendation ("R&R") that this court grant the motion for summary judgment filed by all eighteen defendants of record. Plaintiff Dmitry Pronin ("Pronin"), an inmate who alleges that defendants violated his constitutional rights, filed written objections to the R&R. For the reasons set forth below, the court adopts the R&R and grants defendants' motion for summary judgment.

## I. BACKGROUND

Pronin's complaint and supporting affidavits document a number of incidents that he alleges occurred while he was incarcerated at the Federal Corrections Institution in Edgefield, South Carolina ("FCI Edgefield"). Specifically, Pronin alleges that defendants: (1) denied his right of access to the courts by, among other actions, failing to

1

provide him access to the prison law library; (2) retaliated against him by treating him like an animal and denying him access to courts; (3) violated his constitutional rights by failing to timely send him certain incident reports and treating him differently than his Spanish-speaking cellmate; (4) violated the Eighth Amendment by showing deliberate indifference to his medical needs and creating filthy prison conditions; and (5) violated his constitutional rights under a theory of supervisory liability. Defendants deny that the allegations amount to constitutional violations and assert the defense of qualified immunity.

Pronin filed the present action on December 3, 2012. Pronin filed an amended complaint on February 13, 2013 and a second amended complaint on April 29, 2013. On August 21, 2013, defendants filed a motion to dismiss. Pronin filed a response on September 24, 2013. On January 13, 2014, the magistrate judge issued an R&R, treating the motion to dismiss as a motion for summary judgment and recommending that the court grant the motion because Pronin failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). This court rejected the magistrate judge's recommendation, finding a genuine issue of material fact as to whether defendants hindered Pronin's ability to obtain grievance forms. The case was then remanded back to the magistrate judge for further consideration of defendants' motion.

Defendants subsequently filed a motion for summary judgment on May 27, 2014. Pronin filed responses on June 16, 2014, August 4, 2014, and August 18, 2014. The magistrate judge issued an R&R on September 5, 2014. Pronin filed objections to that

R&R on September 22, 2014, and filed supplemental objections on September 25, 2014.

The matter has been fully briefed and is now ripe for the court's review.

## II.  STANDARDS

### A.    Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration.  28 U.S.C. § 636(b)(1).

### B.    Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will

3

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  Id. at 255.

### C.     Pro Se Plaintiff

Plaintiff is proceeding pro se in this case.  Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980).  Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id.  Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim.  See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.  DISCUSSION

Pronin objects to the R&R on eight grounds.  Pronin asserts that the magistrate judge erred in finding that:  (1) there is no independent constitutional right to library access, legal supplies, or legal assistance; (2) Pronin's retaliation claim should fail as a matter of law; (3) Pronin failed to demonstrate a due process claim; (4) finding that Pronin failed to demonstrate a medical indifference claim; (5) Pronin failed to demonstrate a cause of action for cruel and unusual punishment; (6) Pronin failed to demonstrate an equal protection violation; (7) Pronin failed to demonstrate a cause of action for supervisory liability; and (8) defendants are entitled to qualified immunity. The court will address each objection in turn.

4

### A.     Access to Courts

Pronin's first objects to the magistrate judge's finding that there is no independent constitutional right to library access, legal supplies, or legal assistance.  Pl.'s Objections 2.  Pronin further objects to the magistrate judge's finding that he failed to allege a cause of action for denial of access to courts based on the loss of his legal paperwork.  Id. at 3.

In Bounds v. Smith, 430 U.S. 817, 821 (1977), the Supreme Court explained that "prisoners have a constitutional right of access to the courts."  However, "Bounds did not create an abstract, freestanding right to a law library or legal assistance."  Lewis v. Casey, 518 U.S. 343, 351 (1996).  A prisoner claiming a Bounds violation must show:  (i) that shortcomings in the prison's library or legal assistance program hindered his efforts to attack his sentence, directly or collaterally, or to challenge the conditions of his confinement; and (ii) that he was actually injured as a result of these shortcomings.  Lewis, 518 U.S. at 351–53, 355.  To establish a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct, Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723–24 (4th Cir. 1989), by demonstrating "that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded."  Jackson v. Wiley, 352 F. Supp. 2d 666, 679–80 (E.D. Va. 2004).

Plaintiff objects to the magistrate judge's reliance on Cobb v. Ozmint, which states that a prisoner "has no independent constitutional right to library access, legal supplies, or legal assistance."  No. 0:08-cv-3978, 2010 WL 2943073, at *4 (D.S.C. July 1, 2010) report and recommendation adopted, 2010 WL 2990013 (D.S.C. July 27, 2010).  However, given that the magistrate judge was referring to Pronin's allegation that

envelopes, paper, and other supplies were not made available to him, compl. ¶ 13, the court finds that the magistrate judge properly relied on Cobb to dispose of this part of Pronin's denial of access to courts claim.

As for Pronin's allegation that defendants Jake Burkett ("Burkett") and Troy Johnson ("Johnson") "successfully got rid of [Pronin's] legal paperwork," Pl.'s Objections 3, this claim relates to an incident in which Burkett allegedly placed certain legal paperwork in Pronin's old cell, cell 236, which Pronin's former cellmate later destroyed on November 11, 2012 by throwing the paperwork on the floor and flushing part of it down the toilet.  Compl. ¶ 6; Am. Compl. ¶ 10–12.  Pronin alleges that Burkett then "maliciously and deliberately left [his] legal paperwork in cell 236 for another six hours, so that [his] paperwork was mostly ruined by [his] then-cellmate."  Compl. ¶ 8(a).

Defendants have attached the declaration of Burkett to their motion for summary judgment.  In his declaration, Burkett avers that he did not place the legal paperwork in cell 236 with the intention that Pronin's cellmate destroy the paperwork and that when he was notified of the water in cell 236, he "gathered all of Mr. Pronin's property that could be identified as his property from cell 236, and gave Mr. Pronin his property."  Def.'s Mot. Ex. 23 ¶ 4–5.  Burkett further avers that he "did not leave any of Mr. Pronin's documents, including any envelopes which could clearly be identified as Mr. Pronin's paperwork in cell 236 for any reason."  Id. Ex. 23 ¶ 5.

Thus, in light of Burkett's uncontested declaration, there is no genuine issue of material fact as to whether he intentionally destroyed Pronin's legal paperwork. Therefore, Burkett's actions amount to, at most, negligence, which is not actionable under § 1983.  See Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995) (finding that "negligent

denials of access" are not actionable under § 1983); <u>Wise v. Lexington Cnty. Sheriff's</u>

<u>Dep't</u>, No. 4:06-cv-1842, 2008 WL 551618, at *5 (D.S.C. Feb. 26, 2008) <u>aff'd</u>, 283 F.

App'x 155 (4th Cir. 2008) ("Prisoners do not have a cause of action under § 1983 for

negligent interference by prison officials with their right of access to the courts.") (citing

<u>Pink</u>, 52 F.3d at 77)).

      Moreover, even if the court were to assume that there was a genuine issue of

material fact as to whether Burkett intentionally destroyed Pronin's legal paperwork, this

claim still fails because Pronin has not shown with specificity that he was injured by the

alleged denial of access to his legal property.  <u>Cochran</u>, 73 F.3d at 1316.

      In alleging actual injury, Pronin lists various documents relating to his epilepsy,

neck tick, and psychological impairments, which he contends were destroyed by Burkett

and Johnson.  Pl.'s Objections 4–5.  Pronin claims that, "had these documents been

presented to the United States District Court for the District of Delaware (where plaintiff

was convicted), it would greatly influence the length of [his] imposed sentence."  <u>Id.</u> at 5.

It appears Pronin is referring to his pending § 2255 motion for post-conviction, on which

the United States District Court for the District of Delaware has not yet ruled.  Defs.'

Resp. Ex. 1.

      The Fourth Circuit considered a similar argument in <u>Strickler v. Waters</u>, when

rejecting a prisoner's denial of access to courts claim.  989 F.2d 1375, 1383 (4th Cir.

1993).  In <u>Strickler</u>, the prisoner contended that the prison's deficiencies delayed his

filing of a habeas corpus petition and thereby delayed the termination of his

imprisonment.  <u>Id.</u>  The Fourth Circuit held that "[s]uch a vague and conclusory

allegation does not state the kind of specific injury or prejudice to his litigation sufficient to survive summary judgment, if it could be said to state an injury at all." Id.

The court finds Strickler instructive here. Accordingly, because Pronin has failed to allege an actual injury, summary judgment for the defendants is appropriate on his access to courts claim claim.

**B.    Retaliation**

Pronin's second objection to the R&R is that the magistrate judge erred in finding that his retaliation claim should fail as a matter of law. Pl.'s Objections 10–11. Pronin contends that he has provided direct and circumstantial evidence of retaliation. Id.

To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally-protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must also present more than conclusory accusations of retaliation, id. at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. See, e.g., Cochran, 73 F.3d at 1318; Hughes v. Bledsoe, 48 F.3d 1376, 1387 n.11 (4th Cir. 1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. Am. Civil Liberties Union, Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) ("Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation.").

In his complaint, Pronin alleges that he "was treated like an animal" and denied access to courts for retaliatory reasons. Compl. 2. Pronin details the alleged retaliation in his amended complaint, stating that: (1) Burkett turned off the water and light in Pronin's

8

cell for more than four hours on October 28, 2012; (2) Burkett "maliciously and deliberately left [Pronin's] legal paperwork [in his former cell] for another six hours, so that [his] paperwork was mostly ruined by [his] then-cellmate; and (3) Burkett, "in retaliation on behalf of his elder brother Jake Burkett, wrote [Pronin] an incident report where he claimed that on October 28, 2012, [Pronin] pressed an emergency button without purpose and thus alternated (sic) a life-safety device." Am. Compl. ¶¶ 8, 9.

The court agrees with the magistrate judge's finding that each of Pronin's retaliation claims fail as a matter of law. As an initial matter, Pronin presents conflicting statements as to whether his exercise of a constitutionally protected right was a substantial factor motivating the alleged retaliatory actions. Cochran, 73 F.3d at 1318. In his complaint, Pronin acknowledges that Burkett turned off his cell's water and light on October 28, 2012 because "somebody from our cell threw a tray at [Burkett]." Compl. Ex. 2 at 1. However, in his objections to the R&R, Pronin claims for the first time that this alleged retaliatory act occurred "to prevent [Pronin] from writ-writing." Pl.'s Objections 13. He goes on to state that the collective retaliation "completely ruined his expectations to achieve [a] successful § 2255 motion." Id. at 14.

Even assuming Pronin properly alleges that the retaliation occurred in response to his exercise of a constitutionally protected right, he has failed to demonstrate that an adverse effect occurred as a result. Am. Civil Liberties Union, Inc., 999 F.2d at 785. As previously noted, Pronin has filed a § 2255 motion that is currently pending before the United States District Court for the District of Delaware. Defs.' Resp. Ex. 1. Because Pronin has not suffered an adverse effect from the alleged retaliation, his retaliation claim fails as a matter of law.

9

### C.     Due Process

Pronin's third objection to the R&R is that the magistrate judge erred in finding that Pronin failed to demonstrate a due process claim.  Pl.'s Objections 16.  Pronin contends that the magistrate judge "completely overlook[ed]" the fact that Pronin was deprived of his legal property.[1]  Id.  Pronin again details the alleged loss of his legal paperwork due to the actions of Burkett and Johnson, claiming that as a result of the defendants' actions, Pronin lost not only a "substantial part of his property, but also his fair hope and regar[d] to obtain freedom [and] liberty faster than it would be in current circumstances."  Id.

The Due Process Clause provides that no State shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. However, the Due Process Clause is not implicated by a negligent act of a governmental official causing unintended loss of or injury to life, liberty, or property.  Daniels v. Williams, 474 U.S. 327 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995).  Moreover, "[a]n unauthorized intentional deprivation of property by a [government] employee does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful postdeprivation remedy for the loss is available."  Cyrus v. U.S. Marshals

---

[1] Pronin does not appear to object to the magistrate judge's finding that no violation of due process took place when Pronin received copies of incident reports concerning his suicide attempts more than 24 hours after the incidents happened.  R&R 12.  Regardless, the court finds that the magistrate judge properly relied on Wolff v. McDonnell to find that due process does not require that Pronin receive notice of an incident report within 24 hours of the incident.  See Wolff v. McDonnell, 418 U.S. 539, 563–567 (1974) (finding that an inmate is entitled to the following:  1) written notice of the charges at least 24 hours in advance of the hearing; 2) written findings as to the evidence relied upon and reasons for the disciplinary action; and 3) the right to call witnesses and present evidence in his defense, provided that there is no undue hazard to institutional safety or correctional goals).

of Columbia, SC, No. 8:05-cv-1384, 2007 WL 601610, at *5 (D.S.C. Feb. 21, 2007)

(quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)), report and recommendation

adopted No. 8:05-cv-1384, 2007 WL 809608 (D.S.C. Feb. 27, 2007); see Raditch v.

United States, 929 F.2d 478, 481 (9th Cir. 1991) ("Although Hudson involved § 1983 and

the Fourteenth Amendment, the same due process principles apply to the federal

government through the Fifth Amendment.").

Here, "[t]here were adequate postdeprivation remedies available to [Pronin] and

therefore, the conduct complained does not violate the procedural requirements of the

Due Process Clause." Cyrus, 2007 WL 601610, at *5. Accordingly, Pronin's due

process claim fails as a matter of law.[2]

**D.    Deliberate Indifference**

Pronin's fourth objection to the R&R is that the magistrate judge erred in finding

that Pronin failed to demonstrate a medical indifference claim. Pl.'s Objections 18.

The Fourth Circuit has recognized that "an inmate, with his conviction, forfeits or

has circumscribed many rights and privileges afforded to other persons." United States v.

Gore, 592 F.3d 489, 493–94 (4th Cir. 2010). This forfeiture is not absolute; prisoners

inherently maintain their Eighth Amendment right to remain free from cruel and unusual

punishment. Id. A prison employee who shows "deliberate indifference to [the] serious

medical needs" of a prisoner violates that prisoner's constitutional right to remain free

---

[2] Although Pronin alleges that defendant John Bryant, a Correctional Counselor at FCI Edgefield, lost his administrative remedies, compl. ¶ 10, such allegations have no effect on Pronin's due process claim. See Cyrus, 2007 WL 601610, at *5 (finding, in the context of prisoner's due process claim that, "even if defendant allegedly failed to process the prisoner's grievances, the plaintiff has not stated a constitutional claim"); see also Montalvo v. Owen, No. 6:10-cv-01626, 2010 WL 4751576, at *3 (D.S.C. Nov. 16, 2010) ("[I]nmates have no constitutionally protected right to a grievance procedure.").

from "the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citing Gregg v. Georgia, 428 U.S. 153 (1976)). In order to establish a "deliberate indifference" to medical needs, plaintiff must demonstrate that defendant's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Furthermore, "an inadvertent failure to provide adequate medical care" does not meet the standard required to claim an Eighth Amendment violation, nor does "mere negligence or malpractice." Estelle, 429 U.S. at 105–06.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Prison officials implement the type and amount of medical treatment at their discretion. See e.g., Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir. 2011) (holding that deliberate indifference standard "requires much more" than taking issue with the "amount and kind of medical care" an inmate received); Faison v. Rosado, 129 F. App'x 490, 492 (11th Cir. 2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim").

In his complaint, Pronin alleges that he entered the Special Housing Unit ("SHU") at FCI Edgefield  after a sexual assault occurred for which he did not receive proper psychological help.  Compl. Ex. 1 at 2.  In his amended Complaint, Pronin alleges that defendant Dr. Rex Blocker ("Dr. Blocker"), the Clinical Director at FCI Edgefield, "failed to see [him] as a chronic care clinic patient for almost a year, falsified [his] medical record by placing wrong reason for [his] neurological condition (nervous neck

12

tick), ignored [his] requests to correct the situation, ignored the situation with [his] eye infection, and [his] seizure-like activity." Am. Compl. ¶ 3. In addition, Pronin maintains that on November 27, 2012, defendant Nurse Patina Walton-Greer ("Walton-Greer") refused to "take a sick call from [him] concerning his eye infection [and] to give him a blank form for a sick call." Id. ¶ 11. Finally, Pronin alleges that defendant Louisa Fuertes-Rosario ("Fuertes-Rosario"), the Health Services Administrator at FCI Edgefield, "failed to correct the false reasoning for [his] neurological condition (nervous neck tick), [and] ignored [his] requests to her pertaining to the situation." Id. ¶ 4.

As an initial matter, the court finds that, other than an apparent scrivener's error as to the date of Pronin's initial examination by Dr. Blocker, the magistrate judge correctly summarized Pronin's medical treatment from defendants. The record reveals that Pronin was initially examined by Dr. Blocker on January 18, 2012.[3] Defs.' Mot. Summ. J. Exs. 12 at 21–23; 13 at 10. Upon examination, Dr. Blocker agreed with a diagnosis in Pronin's medical history indicating that he had an unspecified type of epilepsy. Id. Ex. 12 at 22. Dr. Blocker also addressed Pronin's psychological issues, diagnosed Pronin with an unspecified psychosis, and ordered a comprehensive blood work-up. Id. Ex. 12 at 21–23. During the same examination, Dr. Blocker examined Pronin's neck and found that he had full range of motion. Id. Ex. 12 at 22. Results of an x–ray of Pronin's neck were negative for any abnormalities, and the medical records indicate that Pronin has minor chronic neck pain. Id. Exs. 11 at 8; 12 at 21.

---

[3] The R&R states that Pronin's initial examination by Dr. Blocker took place on January 18, 2013. R&R 15. In support, the magistrate judge cites Dr. Blocker's declaration and the relevant medical records, which both indicate that this examination occurred on January 18, 2012. Defs.' Mot. Summ. J. Exs. 11 at 2; 12 at 21–23.

Thereafter, Pronin saw psychology staff for an intake screening, and the staff referred him for a telepsychiatry session.  Id. Ex. 12 at 24.  Pronin agreed to a plan that would be monitored by psychology staff quarterly.  Id. Ex. 11 at 4.  On February 7, 2012, Pronin agreed to take two anti-depressant medications.  Id. Ex. 12 at 27–31.  Pronin later stopped taking the medications at his own request.  Id. Ex. 12 at 36–37.  He continued to be treated for his mental health conditions and saw Dr. Blocker on February 22, 2013.  Id. Ex. 12 at 82–84

Pronin was seen and treated twice for his eye problem on December 4, 2012, and December 30, 2012.  Id. Ex. 12 at 68, 72, 73.  Dr. Blocker avers that after these incidents, Pronin did not complain about problems with his eyes again.  Id. Ex. 11 at 6.  The record further reveals that Pronin was treated for seizure-like symptoms on February 16, 2013, February 22, 2013, and March 26, 2013.  Id. Ex. 12 at 79–89, 112–17.  Overall, medical records indicate that Pronin was seen 44 times in 16 months for various medical reasons. Id. Exs. 11 ¶ 27; 12; 13.

In his objections, Pronin relies on the R&R to argue that Dr. Blocker waited more than a month after Pronin's initial examination on January 18, 2013 to prescribe him medication on February 22, 2013.  Pl.'s Objections 19.  Regardless of the correct date of the initial examination, an allegation of a delayed prescription of medication does not constitute a constitutional deprivation.  See Allah, 442 F. App'x at 635; Brown v. Thompson, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary).

Regarding Pronin's claim against Nurse Walton-Geer, the medical records indicate that Pronin only complained of and was seen for eye infections on two occasions—never by Walton-Geer. Defs.' Mot. Summ. J. Ex. 12 at 68–69, 72–73. The medical records also show that on November 27, 2012, the day Pronin alleges Walton-Geer refused him a sick call, he was counseled and received a care plan from health services. Id. Ex. 13 at 8. Thus, the magistrate judge correctly found that Pronin failed to state a claim of deliberate indifference to medical needs against Walton-Geer.

As for Fuertes-Rosario, Pronin states in his objections that he complained to her about Dr. Blocker and Walton-Geer, and she therefore had actual knowledge of the "deficiencies in the medical care system." Pl.'s Objections 21. However, even assuming that Pronin's allegations are true, Fuertes-Rosario did not provide him with direct medical care and her testimony reveals that she had "no authority or duty to overrule the professional and informed decisions made by physicians." Id. Ex. 15 at 1. Furthermore, Pronin fails to demonstrate that, as a result of Fuertes-Rosario's alleged inaction, his treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Therefore, any inaction on her part could not constitute deliberate indifference to medical needs. See Miltier, 896 F.2d at 851.

To the extent Pronin seeks to hold Fuertes-Rosario liable under a theory of supervisory liability, his claim must also fail. See Ashcroft v. Iqbal, 556 U.S. 662, 693 (2009) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating Bivens supervisory liability entirely."). As

15

explained above, Pronin has failed to demonstrate an "'affirmative causal link' between [Fuertes-Rosario's] inaction and the particular constitutional injury suffered by the [Pronin]."  Fox v. Drew, No. 8:12-cv-421, 2013 WL 4776706, at *11 (D.S.C. Sept. 4, 2013) (holding that a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms and requiring a plaintiff to establish, among other things, "that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff" to prevail under Bivens or § 1983 on a theory of supervisory liability).

Accordingly, Pronin has failed to establish a claim of deliberate indifference to medical needs.

### E.      Cruel and Unusual Punishment

Pronin's fifth objection to the R&R is that the magistrate judge erred in finding that Pronin failed to demonstrate a cause of action for cruel and unusual punishment. Pl.'s Objections 23.

The Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 103 (quoting Gregg, 428 U.S. at 173). However, the Eighth Amendment "does not mandate comfortable prisons," and, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  Rhodes v. Chapman, 452 U.S. 337, 347–49 (1981); see also Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).  "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of

mind.'"  Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler, 989 F.2d at 1379).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).  "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment."  Strickler, 989 F.2d at 1381.

In his complaint, Pronin alleges that defendants did not remove a bathroom container from his cell prior to handing out lunch trays and later did not remove the container after lunch was over, thereby forcing him to "eat in filthy conditions."  Compl. ¶ 19.  In an affidavit, Pronin further alleges that defendants turned off the lights and water in the cell range where he was housed so that he was deprived of light and water for more than four hours.  Compl. Ex. 1 at 1.

Pronin now alleges for the first time in an affidavit attached to his objections that these conditions lasted for a period of three and a half days.  Pl.'s Objections Ex. 1 at 1–2.  Specifically, Pronin avers that, while housed in the SHU for three and a half days, he ate his meals "in filthy conditions" and was "denied pure drinking water" on multiple occasions.  Id.  Pronin further claims that the "lack of drinking water caused [him] great physical and emotional anguish."  Id. at 2.

The most serious claim Pronin makes is that he was not provided with "pure drinking water" on multiple occasions over a period of three and a half days.  Id.  "Given the inevitable health problems that would be occasioned by such an event, it strains credulity to accept this statement at face value."  Gibert v. Anderson Cnty. Sheriff's

Office, No. 0:06-cv-1853, 2007 WL 328840, at *9 (D.S.C. Feb. 5, 2007) (discussing plaintiff's allegations regarding deprivation of water).

Nevertheless, even when Pronin's complaint and affidavits are construed in the light most favorable to him as the non-moving party, his allegations of "great physical and emotional anguish" as a result of the alleged deprivation of water are inadequate to survive a motion for summary judgment. Strickler, 989 F.2d at 1381 ("The mere incantation of 'physical and mental injury,' of course, is inadequate to survive a motion for summary judgment."). Accordingly, Pronin's claim of cruel and unusual punishment fails as a matter of law.

### F.     Equal Protection Violation

Pronin's sixth objection to the R&R is that the magistrate judge erred in finding that Pronin failed to demonstrate an equal protection violation. Pl.'s Objections 32.

"[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause . . . must still be analyzed in light of the special security and management concerns in the prison system." Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001). "To succeed on an equal protection claim, a prisoner must first show that he was treated differently from others who were similarly situated and that the unequal treatment resulted from intentional or purposeful discrimination." Daye v. Rubenstein, 417 F. App'x 317, 318 (4th Cir. 2011). After the prisoner makes such a showing, the prisoner "must allege facts that, if 'true, would demonstrate that disparate treatment lacks justification under the requisite level of scrutiny.'" Id. at 318–19 (quoting Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002)).

In his complaint, Pronin alleges that defendant Lieutenant Eda Olivera-Negron ("Olivera-Negron") discriminated against him when she covered up for "a Spanish-speaking person (my cellmate from 236)" regarding the circumstances of his loss of legal paperwork on November 11, 2012.  Compl. ¶ 6; Am. Compl. ¶ 10.  Pronin alleges that his cellmate lied about the incident, and implies that Olivera-Negron sided with his cellmate's version of events because they were both Hispanic.  Am. Compl. ¶¶ 13–14.  Pronin further alleges that Olivera-Negron's decision to move him, but not his cellmate, to a different cell resulted in the loss of certain legal paperwork, including the appeal of a Disciplinary Hearing Officer's decision in which he was found guilty of fighting with another Hispanic inmate.  Id. ¶ 15.

In response, Olivera-Negron has submitted a declaration in which she recounts a different version of this incident.  Olivera-Negron avers that on November 11, 2012, she was not working in the SHU, but rather was assigned to a different post.  Defs.' Mot. Summ. J. Ex. 21 at 2.  Therefore, she alleges, she was not responsible for cell changes, property in the SHU, or supervising SHU staff.  Id. Ex. 21 at 2.  Olivera-Negron maintains that she was called to the SHU on that date because she was told Pronin was being disruptive.  Id. Ex. 21 at 2.  She claims that when she arrived, Pronin had already been moved.  Id. Ex. 21 at 2.  She acknowledges speaking with Pronin's Hispanic cellmate, but avers that she did not cover up for this inmate and did not discriminate against Pronin.  Id. Ex. 21 at 2.

Olivera-Negron's declaration refutes Pronin's unsubstantiated allegations that she was responsible for moving him to a different cell on November 11, 2012.  Given that Pronin has not submitted any evidence to dispute Olivera-Negron's testimony that she

was not responsible for his removal from cell 236, his equal protection claim must fail as a matter of law.

### G.     Supervisory Liability

Pronin's sixth objection to the R&R is that the magistrate judge erred in finding that Pronin failed to demonstrate a cause of action for supervisory liability against defendants Kenneth Atkinson ("Atkinson") and Daniel Fallen ("Fallen"), who were FCI administrators at all times relevant in Pronin's complaint.  Pl.'s Objections 36.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury."  Miltier, 896 F.2d at 854.  A plaintiff must establish three elements to prevail on a theory of supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

In his complaint, Pronin alleges that Atkinson allowed violations of his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments by "[f]ail[ing] to take a decisive action upon receiving written requests concerning B Unit Staff Members coming to SHU without any remedy forms" and "[f]ail[ing] to supervise and direct staff members."  Compl. ¶ 1.  Pronin alleges that Fallen "failed to react upon receiving the information from [Pronin] concerning C.O. Brandon Burkett gravely

20

violating 8th Amendment rights . . . by cutting off water [and] light in cell 136 on October 28, 2012." Id. ¶ 2. Pronin claims that, in allowing Burkett to go unpunished, Fallen violated the Fifth, Eighth, and Fourteenth Amendments. Id.

For the reasons stated above, the court finds that Pronin has failed to demonstrate a genuine dispute of material fact as to whether any defendant deprived him of a constitutionally protected right. Therefore, Pronin cannot establish that he suffered any constitutional injuries, much less "an affirmative causal link" between Atkinson's and Fallen's inactions and those alleged injuries. Shaw, 13 F.3d at 799. Accordingly, Pronin has failed to present evidence sufficient to prevail on a theory of supervisory liability against Atkinson and Fallen.

### G.     Qualified Immunity

Pronin's seventh objection to the R&R is that the magistrate judge erred in finding that defendants are entitled to qualified immunity. Pl.'s Objections 39. Specifically, Pronin asserts that there is a disputed question of material fact as to whether defendants violated his constitutional rights, and therefore defendants are not entitled to qualified immunity. Pl.'s Objections 41.

The doctrine of qualified immunity protects government officials from liability where the official's conduct does not violate a "clearly established" constitutional right. Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity can shield Bureau of Prison employees from suit. See Williams v. Ozmint, No. 11–6940, 2013 WL 1987231, at *3 (4th Cir. May 15, 2013) (holding qualified immunity protects prison wardens); McCaster v. Clausen, 684 F.3d 740 (8th Cir. 2012) (finding jailhouse nurse did not act with deliberate indifference

and was entitled to qualified immunity); <u>LeMarbe v. Wisneski</u>, 266 F.3d 429 (6th Cir. 2001) (holding that a prison doctor is entitled to qualified immunity); <u>Williams v. Mehra</u>, 186 F.3d 685 (6th Cir. 1999) (holding prison psychiatrists were shielded by qualified immunity).

To resolve a qualified immunity defense, a court must "decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The court must then determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." <u>Id.</u> Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. <u>Id.</u> at 236.

Because Pronin has failed to show that defendants' conduct violated any clearly established rights, the court finds that defendants are entitled to qualified immunity.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2015**
**Charleston, South Carolina**