**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| DMITRY PRONIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:12-cv-03416-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| LT. TROY JOHNSON, and JAKE | ) | |
| BURKETT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendants Lt. Troy Johnson ("Johnson") and

Jake Burkett's ("Burkett," together with Johnson, "defendants") motion for summary

judgment. For the reasons set forth below, the court denies defendants' motion for

summary judgment.

## I. BACKGROUND

Plaintiff Dmitry Pronin ("Pronin") filed the instant action on December 3, 2012,

alleging that he suffered numerous civil rights violations during his incarceration at the

Federal Corrections Institution in Edgefield, South Carolina ("FCI Edgefield"). The most

significant of these allegations is Pronin's claim that he was denied his right of access to

the courts. Pronin contends that on November 5, 2012, while he was housed in the

Special Housing Unit ("SHU") of FCI Edgefield, he received a package from his former

attorney, Galina Rakityanskaya ("Rakityanskaya"), which contained—among other

things—certain medical documentation which he used to draft a habeas petition that was

to be filed in the District of Delaware (the "Draft Delaware Petition"). Pronin contends

that the Draft Delaware Petition and all related attachments were placed in an envelope

by Saturday, November 10, 2012. However, on Sunday, November 11, 2012, before the

1

envelope could be mailed, Pronin was involved in an incident with his then cellmate and removed from his cell. Crucially, Pronin contends that his legal papers—including the Draft Delaware Petition and its attachments—were left in the cell with his cellmate. Pronin further contends that Burkett, who was eventually tasked with retrieving these documents from the cell, intentionally left a portion of Pronin's documents in the cell, where they were destroyed, and that Johnson subsequently threw out another portion of Pronin's documents two days later. While Pronin was eventually able to file another habeas petition in the District of Delaware (the "Filed Delaware Petition"), he argues he was unable to recover certain of the medical documents he received from Rakityanskaya as a result of the defendants' actions. Specifically, Pronin claims to have lost medical certificates from Policlinic #3 of the City of Irkutsk, Russia, which contained evidence of his mental illness. Notably, Pronin's filing in the District of Delaware <u>did</u> contain medical certificates from Policlinic #2, which were also sent by Rakityanskaya in the same package that allegedly contained the Policlinic #3 documents.

The court granted defendants' prior motion for summary judgment as to all of Pronin's claims on March 31, 2015. ECF No. 152. Pronin appealed the court's decision. The Court of Appeals affirmed the court's grant of summary judgment on most of Pronin's claims, but found that the court erred in its analysis of Pronin's access-to-courts claim by relying on defendants' declarations that they did not destroy Pronin's documents, and Burkett's declaration that he did not intend to destroy such documents, when those declarations were contested. ECF No. 162 at 6. The Court of Appeals went on to find that Pronin had raised a material question of fact as to whether he was injured by defendants' actions. The Court of Appeals recognized that Pronin's Filed Delaware

Petition raised a claim for ineffective assistance of counsel based on his attorney's refusal to pursue a "neuropsychiatric" evaluation in connection with his sentencing, and found that "evidence of serious mental illness . . . would have supported Pronin's case at sentencing." Id. at 7. Thus, the Court of Appeals concluded,

> the [d]efendants' alleged destruction of [Pronin's] legal materials prevents him from providing the court with his medical history showing that these illnesses had been diagnosed prior to his criminal activity. This evidence could be helpful in showing that his attorney should have investigated his mental health. Without expressing an opinion as to Pronin's likelihood of success in his § 2255 proceeding, we find that Pronin has raised a material question of fact as to whether he can show a nonfrivolous and arguable question regarding whether such materials would result in a successful § 2255 motion.

Id. at 8.[1] Therefore, the Court of Appeals vacated the court's grant of summary judgment on Pronin's access to courts claim and remanded the case for further proceedings. Id. at 13.

On November 11, 2016, defendants again moved for summary judgment, arguing that Pronin's sworn statements fail to raise a material question of fact because they are

---

[1] Defendants state that the question of whether their actions "prevented [Pronin] from pursuing a 'nonfrivolous' and 'arguable' claim in his pending § 2255 motion"—i.e., that he was actually injured by defendants' alleged actions, see Lewis v. Casey, 518 U.S. 343, 353 (1996)—is still before this court. If defendants simply mean that Pronin must show that they actually destroyed his medical records, they are correct, but to the extent defendants are suggesting that the court must still evaluate whether the destruction of Pronin's medical records prevented him from pursuing a nonfrivolous claim, they are incorrect. The Court of Appeals has already found that—assuming defendants destroyed evidence of Pronin's medical history—Pronin has raised a material question of fact as to whether it was "nonfrivolous" or "arguable" that these materials would have resulted in a successful § 2255 petition in the District of Delaware. ECF No. 173 at 8. Thus, the question of whether defendants' alleged actions cost Pronin "the opportunity to pursue a 'nonfrivolous' or 'arguable' claim" has been resolved in Pronin's favor for summary judgment purposes. The only question that remains is whether defendants actually took such actions.

barred by the sham affidavit rule.[2]  ECF No. 173.  Pronin filed a response on February

15, 2017, ECF No. 192, and defendants filed a reply on March 3, 2017.  ECF No. 199.

Pronin then filed a sur-reply, ECF No. 201, along with a motion to stay all proceedings

with respect to defendants' motion for summary judgment, ECF No. 202, and a motion

for the issuance of a subpoena, ECF No. 203, on March 20, 2017.  Defendants responded

to the motion to stay on March 31, 2017, ECF No. 204, and the motion for issuance of a

subpoena on April 3, 2017.  ECF No. 205.  The matters are now ripe for the court's

review.

## II.  STANDARD

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary

judgment stage, the court must view the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in his favor.  Id. at 255.

---

[2] Defendants also argue that they are entitled to qualified immunity, but they only
argue they are entitled to qualified immunity because Pronin's constitutional rights were
not violated.  ECF No. 173 at 11–14.  Thus, defendants' qualified immunity argument
merges with their sham affidavit argument and their argument that Pronin has failed to
"identify an actual injury resulting from an alleged denial of access to the courts"—the
latter of which the court need not address for the reasons discussed in footnote 1.

# III.  DISCUSSION

Defendants argue that Pronin has failed to raise a genuine issue of fact as to whether they actually destroyed or intentionally failed to retrieve any of Pronin's legal documents.  Pronin has provided sworn statements on this issue, but defendants contend that these statements are barred by the "sham affidavit rule."

It is well-established that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999); see also Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").  This principle is frequently referred to as the "sham affidavit rule."[3]  "For the sham affidavit rule to apply 'there must be a bona fide inconsistency'" between the affiant's sworn averments or testimony.  Kinser v. United Methodist Agency for the Retarded--W. N. Carolina, Inc., 613 F. App'x 209, 210 (4th Cir. 2015) (alterations omitted) (quoting Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001)).  Courts are careful to limit "[a]pplication of the sham affidavit rule at the summary judgment stage . . . to situations involving flat contradictions of material

---

[3] The court notes that this case involves a somewhat awkward application of the sham affidavit rule.  In an ordinary case, the sham affidavit rule would be used to prevent a plaintiff from getting around a defendant's summary judgment argument by simply filling in gaps in the record or raising issues of fact with sworn averments.  Here, defendants have identified a variety of perceived inconsistencies contained in several different sources and used these inconsistencies as the entire basis of their motion.  The court finds it unnecessary to determine whether the sham affidavit rule can even be applied in this context because it finds that the prerequisites for applying the rule have not been satisfied.

fact." Sky Angel U.S., LLC v. Discovery Commc'ns, LLC, 28 F. Supp. 3d 465, 484 (D. Md. 2014) (quoting Elat v. Ngoubene, 993 F. Supp. 2d 497, 528 (D. Md. Jan. 21, 2014)).

Defendants have not listed out Pronin's supposed contradictions in any organized or precise manner. Nevertheless, defendants appear to argue that Pronin has contradicted himself in the following ways:

(1) By previously stating, in an affidavit attached to his December 27, 2012 habeas petition filed in the District of South Carolina (the "South Carolina Petition"), that when Burkett returned with a portion of the documents left in Pronin's cell "the § 2255 Motion was still there," Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 17, but later claiming that he is missing the Policlinic #3 certificates;

(2) By previously stating, in the same affidavit discussed above, that when he received a package of documents from Rakityanskaya, "there was (sic) medical documents in the package. Those were the medical documents from Russian Federation Policlinic #2 . . . [,]" Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 4, but later claiming that he also received documents from Policlinic #3;

(3) By previously stating, in the same affidavit discussed above, that he saw Johnson take his documents towards the trash can and when Johnson came back into view, he was no longer holding the documents, Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 31, but later claiming in his deposition that he actually saw Johnson throw the documents away; and

(4) By previously stating that his documents were being held by SHU staff as of November 19, 2012, ECF No. 1-1 ¶ 29, but now claiming that Johnson threw away his documents on November 13, 2012.

ECF No. 173 at 6–10. Having reviewed each of the statements in question, the court is convinced that none rise to the level of "flat contradiction of material fact" required to invoke the sham affidavit rule. The court addresses each statement in turn.

### A. "[T]he § 2255 Motion was still there . . . ."

Pronin claims that following the incident with his cellmate on November 11, 2012 he was transferred to a new cell, at which point Burkett brought him a portion of his legal

papers from his former cell.[4]  ECF No. 192-7, Pronin Dec. ¶ 8.  In his deposition, Pronin

stated that the envelope that contained the Draft Delaware Petition and related materials

was not included in those papers.  ECF No. 173-1, Pronin Dep. 37:12–17.  Defendants

highlight Pronin's claim in his South Carolina Petition that "[u]pon receiving [his]

property [from Burkett,] [Pronin] started to look through it and found out that some of the

legal documents, i.e. half of the file from Rakityanskaya [] were missing. . . . However,

the § 2255 Motion was still there."  Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 17

Defendants do not offer any discussion of these statements in their substantive

arguments, but their description of the facts of the case suggests that the statements are

somehow inconsistent.  ECF No. 173 at 3.  Thus, it is not clear that defendants even view

these statements as "flat contradictions of material fact."  Nevertheless, the court

addresses them for the sake of clarity.

The court first notes that any inconsistency contained in these statements is

wholly immaterial.  This case turns on whether defendants intentionally destroyed or

withheld documents which prevented Pronin from pursuing a non-frivolous claim.  The

only way in which the two statements would contradict each other would be if Pronin's

statement that "the § 2255 Motion was still there" were read to indicate that Burkett

actually brought him the envelope containing the Draft Delaware Petition, as he clearly

claimed that Burkett failed to bring him that envelope in his deposition.  Even assuming

this was the proper reading, it is simply not a contradiction of <u>material</u> fact.  Pronin's

_____

[4] Defendants briefly argue that, because Burkett brought Pronin some of his legal
documents, "Burkett's actions amount to, at most negligence, which is not actionable
under § 1983."  ECF No. 173 at 9.  That is quite a leap.  This argument does not warrant
much discussion, but suffice it to say, the court finds that it is entirely possible for a
person to intentionally complete only a portion of an assigned task.  Thus, the fact that
Burkett retrieved some of Pronin's paperwork does not undermine Pronin's claim that
Burkett intentionally left the remainder of his paperwork in his former cell.

access-to-courts claim does not turn on Burkett's failure to bring him an envelope; it turns on Burkett's failure to bring him documentation that could be used to support the Filed Delaware Petition—specifically, the Policlinic #3 documents. Moreover, a thorough reading of the affidavit accompanying Pronin's South Carolina Petition reveals that the term "§ 2255 Petition" was not used to include the envelope, or even the related attachments to the Draft Delaware Petition. It was simply used to refer to the petition itself. See Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 8 (explaining that Pronin made "the package ready to be sent" to the District of Delaware, and that this "package" "consisted of the Motion under U.S.C. title 28 § 2255 itself, two (2) affidavits . . . and notarized medical certificates"). Thus, the statements are not even contradictory, much less "flat contradictions of material fact."

Defendants also cite another statement Pronin made in his deposition testimony, in which he claimed that "defendants 'did not 'collect none (sic) of the legal paperwork that was in the cell.'" ECF No. 173 at 3 (quoting Pronin Dep. 38:1–2). The full statement reads as follows: "[T]hey, totally, collect (sic) none of the legal paperwork[] that was in the cell, and they also left my food there." Pronin Dep. 38:1–3. Having read the transcript of the deposition, it appears Pronin was referring to Burkett as "they," although it is not entirely clear. In any event, the court will assume for the sake of argument that Pronin was referring to Burkett. This makes the statement actually contradictory, as Pronin acknowledged, both prior to and after making the statement in question, that Burkett brought him some of his legal paperwork. Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 8; Pronin Dec. ¶ 8. Still, the issue of materiality remains. Any statements regarding the precise documents that Burkett brought to Pronin following his

transfer to a new cell are immaterial unless they contradict Pronin's claim that Burkett <u>did not</u> bring him the Policlinic #3 documents. Therefore, even if Pronin's testimony that "they" did not bring him any of his legal paperwork was contradicted by prior and subsequent sworn statements, it is still not material because it does not contradict his claim that Burkett left important legal documents in his cell.

**B.    "Those were the medical documents from Russian Federation Policlinic #2."**

Pronin's claim is largely dependent on his assertion that the documents provided by Rakityanskaya included medical certificates from Policlinincs #2 and #3. ECF No. 192 at 2. Defendants argue that this assertion is in direct conflict with another statement made in the affidavit filed alongside Pronin's South Carolina Petition, in which he stated that "there was (sic) medical documents in the package [provided by Rakityanskaya]. Those were the medical documents from Russian Federation Policlinic #2." Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 4. Defendants argue that this statement clearly indicates that the Rakityanskaya file did not include any Policlinic #3 documents. ECF No. 173 at 8. If Pronin is now making a contrary assertion, the contradiction is clearly material as the entire access-to-courts claim is dependent on the existence of the Policlinic #3 documents.

Certainly, Pronin's statement could be read to assert that the Policlinic #2 documents were the only "medical documents" provided in the Rakityanskaya package. However, when all of the circumstances are considered, the court is convinced that a reasonable juror could read the statement differently. It must first be noted that there are not multiple Policlinics #2 documents. The only Policlinic #2 materials that were included in the Filed Delaware Petition were the original "Medical Certificate," and a

translated copy. ECF No. 173-2, Filed Delaware Petition at 18–21. The certificate contains a "diagnosis" of "vegetative-vascular dystonia of eutonic type, asthenic-neurologic syndrome," and lists certain prescribed treatments. The original certificate and the translation are each a single page.[5] Id. It strikes the court as unnatural to refer to the Policlinics #2 medical certificate as multiple "documents." Perhaps one might consider the translation and the original certificate to be separate documents, but the court is convinced that a reasonable fact-finder might find the initial interpretation of Pronin's statement problematic after having looked at the Policlinic #2 "documents" in question.

This interpretation becomes even more problematic when one considers other statements contained elsewhere in the same affidavit. Whether the Policlinics #2 materials constitute one or multiple "documents," it is clear that they constitute a single "certificate." Id. But in the affidavit submitted alongside the South Carolina Petition, Pronin states that he included multiple "certificates" in the package containing his Draft Delaware Petition. Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 8. This is not an isolated incident. In a separate paragraph, Pronin refers to "the unexpected receipt of medical certificate concerning asthenic neurologic condition (sic) and other medical papers." Id. ¶ 5. As noted above, the Policlinic #2 certificate addressed Pronin's alleged "asthenic-neurologic syndrome," indicating that the Policlinic #2 certificate is the certificate Pronin was referencing in this statement. But if this is so, then Pronin's statement indicates that he received "other medical papers" in addition to the Policlinics #2 certificate. Id. The court finds these statements significant, as they clearly indicate that the Policlinics #2 certificate was not the only medical document provided in the Rakityanskaya package.

---

[5] The third page contains only a seal and is otherwise blank.

All that is clear is that at least one of Pronin's statements in the affidavit filed alongside the South Carolina Petition is inaccurate. The statements were all made at the same time, suggesting that the conflict may have been the result of poor phrasing or some other cause. Pronin has not specifically explained the sentence "[t]hose were the medical documents from Russian Federation Policlinic #2," but because that statement is clearly inconsistent with other portions of the <u>same</u> affidavit, the court believes that a reasonable juror could conclude that Pronin did intend to state that the Policlinic #2 certificate was the only medical document he received from Rakityanskaya. Thus, defendants have failed to show that Pronin's subsequent claims that the Rakityanskaya package included a certificate from Policlinic #3 do not "flatly contradict" his prior sworn statements.

C.     **"When T. Johnson came back to my eyesight . . . there was nothing in his hands anymore."**

In the affidavit filed alongside the South Carolina Petition, Pronin explained that after some of his documents were retrieved from his old cell they were placed in a tied-up sheet and left in the SHU lieutenants' office. Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 29. He further explained that on the morning of November 13, 2012, he saw Johnson take a tied up sheet from the office. Id. This is entirely consistent with the statements he has made in this action. Pronin Dep. 53:3–9. In the South Carolina Petition affidavit, Pronin stated that he then saw Johnson go toward a small hallway where the trashcans were located. Case No. 5:12-cv-3623-DCN, ECF No. 1-1 ¶ 30. Johnson left Pronin's field of vision and "[w]hen [] Johnson came back to [Pronin's] eyesight, again standing in front of his office door, there was nothing in his hands anymore." During his deposition, Pronin testified that he saw Johnson throw out the bundled sheet. Pronin Dep. 53:3–25, 55:8–11. Defendants argue that Pronin has contradicted himself on the

issue of whether he actually saw Johnson throw away a portion of his legal documents. ECF No. 173 at 9–10.

The court fails to see how this is a contradiction of a <u>material</u> fact. Pronin's claim against Johnson does not depend on whether he saw Johnson throw out the paperwork, it depends on whether Johnson threw out the paperwork. Though Pronin's statements may be inconsistent in a number of ways, they are not inconsistent on this point. Thus, the sham affidavit rule does not apply.

**D. "[M]y legal property [] has been unlawfully held by SHU staff . . . for more than a week now"**

Defendants last highlight a statement from Pronin's complaint in the instant action, where he stated that:

> [A]s of today, Monday November 19, 2012, I did not see no (sic) copies, filled financial certificate forms, nor legal-sized envelopes . . . , nor remedies forms, nor tort claim, nor the remains of my legal property that has been unlawfully held by SHU staff and lieutenant Johnson for more than a week now . . .

ECF No. 1-1, Compl. ¶ 29. Defendants argue that if the SHU staff was holding "the remains of [Pronin's] legal property" on November 19, 2012, then Johnson could not have possibly thrown out the legal paperwork retrieved from Pronin's cell on November 13, 2012. ECF No. 173 at 10. This argument is obviously dependent on the assumption that the <u>only</u> "legal property" Pronin owned at the time was the paperwork contained in his cell on November 10, 2012. However, Pronin explains in his response that the legal paperwork he had in his cell was not the "sum total" of his legal paperwork. ECF No. 192 at 5. He also had paperwork that was held in the SHU property room. <u>Id.</u> According to Pronin, this is the "legal property" that was being "unlawfully held" as of November 19, 2012. <u>Id.</u> This appears to be consistent with Pronin's prior statements, as

the defendants have not pointed to any prior statements indicating that the papers in Pronin's cell were his only "legal property." A court may not apply the sham affidavit rule where a party explains the contradiction between the two statements. June v. Thomasson, 2016 WL 7374432, at *5 (D. Md. Dec. 20, 2016) ("After thoroughly reviewing case law, the Court concludes that in the Fourth Circuit, the rule remains that an affidavit is not sham if the party presenting it 'explain[s] the contradiction or attempt[s] to resolve the disparity.'" (quoting Cleveland, 526 U.S. at 806)). Pronin has done so here. Therefore, the court finds that the sham affidavit rule does not apply.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** defendants' motion for summary judgment. The court further finds that Pronin's motion to stay and motion for issuance of a subpoena are **MOOT**.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 23, 2017**
**Charleston, South Carolina**