IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| DMITRY PRONIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LIEUTENANT TROY JOHNSON and ) <br> JAKE BURKETT, ) <br> ) <br> Defendants. ) <br> _____ ) | No. 5:12-cv-3416-DCN <br><br> **ORDER** |

The following matter is before the court on defendants Lieutenant Troy Johnson ("Johnson") and Jake Burkett's ("Burkett") (collectively, "defendants") renewed motion to dismiss, ECF No. 287, and plaintiff Dmitry Pronin's ("Pronin") motion to unfreeze funds, ECF No. 300. For the reasons set forth below, the court denies the renewed motion to dismiss and finds the motion to unfreeze funds moot.

## I. BACKGROUND

This case arises out of defendants' alleged violation of Pronin's right of access to the courts during his incarceration at the Federal Corrections Institute in Edgefield, South Carolina ("FCI Edgefield").[1] In June 2011, Pronin pleaded guilty in federal court in Delaware for armed bank robbery; carrying, using, and brandishing a firearm during a crime of violence; and possession of a firearm by an illegal alien. In preparation for Pronin's sentencing, Pronin's counsel considered submitting to the court Pronin's

---

[1] Pronin originally brought other claims as well, but his access-to-courts claim is now his only surviving claim.

1

medical records related to his mental health but eventually decided not to. Pronin was subsequently sentenced in September 2011.

While serving his sentence, Pronin contends that on November 5, 2012, he received a package from his former attorney which contained—among other things—certain medical records from Russia. Pronin used those records to draft a § 2255 habeas petition for ineffective assistance of counsel based on his counsel's failure to submit his medical records during sentencing. The records allegedly showed that Pronin suffered from bipolar disorder and borderline personality, and that he had been diagnosed with a nervous neck tick and epilepsy. Pronin contends that his draft petition and its attachments, including the medical records, were placed in an envelope by Saturday, November 10, 2012. However, on Sunday, November 11, 2012, before the envelope could be mailed, Pronin was involved in an incident with his cellmate and was subsequently removed from his cell. Crucially, Pronin contends that his legal papers—including his Russian medical records—were left in the cell with his cellmate. Pronin further contends that Burkett, who was eventually tasked with retrieving these documents from the cell, intentionally left a portion of Pronin's documents in the cell, where they were destroyed, and that Johnson subsequently threw out another portion of Pronin's documents two days later. As a result, Pronin filed his complaint in the instant case in December 2012. Then in January 2013, Pronin filed his habeas petition in the District of Delaware with his only remaining medical record, which was related to Pronin's nervous neck tick. The petition was ultimately denied, and the U.S. Court of Appeals for the Third Circuit denied Pronin's certificate of appealability.

This court granted defendants' first motion for summary judgment as to all of Pronin's claims on March 31, 2015. ECF No. 152. Pronin appealed the court's decision. The Fourth Circuit affirmed the court's grant of summary judgment on most of Pronin's claims but found that the court erred in its analysis on the issues of intent and injury in Pronin's access-to-courts claim. Pronin v. Johnson, 628 F. App'x 160, 163 (4th Cir. 2015) (per curiam). First, the Fourth Circuit held that the court erred by relying on defendants' declarations that they did not destroy Pronin's documents and on Burkett's declaration that he did not intend to destroy such documents when those declarations were contested. Id. at 162. In other words, there is a question of material fact as to whether defendants intentionally destroyed Pronin's documents. Next, the Fourth Circuit held that Pronin had raised a material question of fact as to whether he was injured by defendants' actions. Id. at 163. The court recognized that Pronin's § 2255 petition raised a claim for ineffective assistance of counsel based in part on his attorney's refusal to submit Pronin's medical records in connection with his sentencing, and found that "evidence of serious mental illness, including bipolar and borderline disorders, would have supported Pronin's case at sentencing." Id. at 162–63. Thus, the Fourth Circuit concluded,

> the [d]efendants' alleged destruction of [Pronin's] legal materials prevents him from providing the court with his medical history showing that these illnesses had been diagnosed prior to his criminal activity. This evidence could be helpful in showing that his attorney should have investigated his mental health. Without expressing an opinion as to Pronin's likelihood of success in his § 2255 proceeding, we find that Pronin has raised a material question of fact as to whether he can show a nonfrivolous and arguable question regarding whether such materials would result in a successful § 2255 motion.

Id. at 163. Therefore, the Fourth Circuit vacated the court's grant of summary judgment on Pronin's access-to-courts claim and remanded the case for further proceedings. Id.

3

On December 18, 2018, defendants filed a renewed motion to dismiss. ECF No. 287. Pronin responded to the motion on January 2, 2019 before he was appointed counsel, ECF No. 292, and then Pronin's newly appointed counsel filed a response on January 29, 2019, ECF No. 304. Defendants filed a reply on February 5, 2019. ECF No. 307. In addition, on January 11, 2019, Pronin filed a motion to unfreeze funds, ECF No. 300. Defendants have not responded to the motion. The court held a hearing on the motions on April 24, 2019.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

#### A. Renewed Motion to Dismiss

Defendants filed a renewed motion to dismiss, arguing that the District of Delaware and Third Circuit's decisions on Pronin's §2255 petition resolve this case through the doctrine of collateral estoppel. Defendants also argue, in a manner more akin to a motion to reconsider than a motion to dismiss, that the development of jurisprudence following Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), a case that the court extensively considered in a prior order, warrants dismissal of this case. The court is not convinced by either argument.

##### a. Collateral Estoppel

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). For collateral estoppel to apply,

> the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004). Here, defendants argue that because Pronin's §2255 petition was ultimately denied by the Third

5

Circuit, the only remaining issue in this case was resolved, and that the Third Circuit's decision should apply here through collateral estoppel.

In determining whether collateral estoppel applies, it is useful to first understand what Pronin must prove to succeed in his access-to-courts claim. The Supreme Court has clearly established that "prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). To prevail on an access-to-courts claim, the prisoner must show that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 351 (1996). Such an injury includes a prisoner's inability to pursue a "nonfrivolous, arguable underlying claim." Christopher v. Harbury, 536 U.S. 403, 415 (2002). The Fourth Circuit determined that summary judgment on Pronin's access-to-courts claim was not warranted in part because Pronin had "raised a material question of fact as to whether he can show a nonfrivolous and arguable question regarding whether such materials would result in a successful § 2255 motion." Pronin, 628 F. App'x at 163. In other words, there is a material question of fact as to whether Pronin's § 2255 petition would have been "nonfrivolous" and "arguable" if he had been able to submit all of his Russian medical records, which would create an actual injury.

Defendants argue that this question was resolved because the District of Delaware denied Pronin's § 2255 petition, and the Third Circuit denied Pronin's certificate of appealability. The Third Circuit specifically stated that Pronin had "not made a substantial showing that it is reasonably probable that he would have received a lesser sentence had the Russian medical report and a formal report prepared by the examining psychologist been admitted into evidence at sentencing." ECF No. 60, United States of America v. Pronin, 11-cr-33 (D. Del. August 3, 2017) (emphasis added). However, this

6

argument fails because the issue in Pronin's § 2255 petition is not identical to the issue here. The Third Circuit simply held that Pronin did not make a substantial showing that his sentence would have been lessened had his singular Russian medical report, related to his nervous neck tick, been submitted at sentencing. This report was the one record that was not lost during the events alleged here.

The issue here is whether Pronin's petition would have been successful had he submitted <u>all</u> of his medical records, not just the singular record about the neck tick. Indeed, the Fourth Circuit specifically drew attention to Pronin's records about his bipolar and borderline disorders when considering whether Pronin has raised a material question of fact regarding the likelihood of success in his § 2255 petition. <u>See</u> <u>Pronin</u>, 628 F. App'x at 163. Those records were not considered by the District of Delaware or the Third Circuit because they were allegedly destroyed by defendants. As Pronin succinctly argues, "[i]f there is any relationship between the two actions, it is only that the result of the 2255 action illustrates [Pronin]'s injury in this action." ECF No. 304 at 5. Therefore, the issue decided by the Third Circuit, i.e., the success of Pronin's § 2255 petition with just his singular medical record about his neck tick, is not the same issue here, which is the likelihood of the success of Pronin's § 2255 petition with all of his medical records.

As support for their argument that the issue here is identical to the issue in Pronin's § 2255 petition, defendants note that Pronin mentioned this case in his request for an issuance of a certificate of appealability of the District of Delaware's denial of his § 2255 petition. In that request, Pronin stated that the instant case "directly pertains to the § 2255 proceedings here." ECF No. 55 at 2, <u>United States of America v. Pronin</u>, 11-

7

cr-33 (D. Del. Apr. 21, 2017).  However, Pronin's acknowledgment that this case relates to his § 2255 petition is irrelevant to the collateral estoppel analysis and is not enough to convince the court that collateral estoppel should apply here.

Pronin also argues that the second requirement of collateral estoppel, that the issue was actually determined in the prior proceeding, cannot be met here.  He contends that the remaining issues in this case were not determined by the District of Delaware or the Third Circuit.  As discussed above, the issue of whether Pronin's § 2255 petition would have been successful had he submitted all of his medical records was not determined.  Moreover, the Fourth Circuit remanded this case for two reasons.  One is the material question of fact regarding Pronin's injury that is discussed above.  The other is the material question of fact as to whether Burkett intentionally destroyed Pronin's documents.  Pronin, 628 F. App'x at 163 (remanding Pronin's access-to-courts claim because "both the intent and injury issues involved disputed issues of material fact").  The decisions on Pronin's § 2255 petition have nothing to do with Burkett's intent.  Therefore, that issue was also not decided by the prior proceedings.

As a final point, Pronin argues that he did not have a full and fair opportunity to litigate the issue, the final requirement of collateral estoppel.  He explains that he was denied an evidentiary hearing on his § 2255 petition before the Third Circuit, meaning that he did not have a full opportunity to present evidence of his claims.  It is unclear to the court what a "full and fair opportunity to litigate" entails in the context of a habeas petition.  However, because collateral estoppel is inapplicable here for other reasons, the court need not delve into this issue.

### b. Development of Jurisprudence after Ziglar v. Abbasi

Defendants next argue that give recent decisions interpreting Ziglar, the court should dismiss this case as an improper Bivens action. In Ziglar, the Supreme Court limited courts' ability to extend Bivens, which permits individuals to recover damages for federal officials' violations of constitutional rights, to contexts previously unrecognized by the Court. 137 S. Ct. at 1857–59. The Court provided a framework to be used for determining whether to permit a Bivens remedy: a court should first determine whether it would be extending a Bivens remedy to a new context, and if it would be, a court should then consider whether "there are any special factors counselling hesitation" in extending Bivens. Id. at 1857–58. As a result of Ziglar's framework, defendants filed a motion for reconsideration on July 21, 2017 asking the court to reconsider its order denying defendants' motion for summary judgment. ECF No. 212. Defendants argued that Ziglar was an intervening change in controlling law that supported the conclusion that a Bivens remedy is inappropriate in this case, meaning that Pronin's case must be dismissed. After analyzing this case pursuant to Ziglar and its framework, the court denied defendants' motion and held that Pronin's claim could proceed as a Bivens action.

Now, defendants argue that the development of post-Ziglar jurisprudence warrants the court's reconsideration of this issue. A court may amend its earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). "A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled." State of N.Y. v. United States, 880 F. Supp. 37, 38

(D.D.C. 1995). Indeed, "[a] party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted." Consulting Engineers, Inc. v. Geometric Software Sols. & Structure Works LLC, 2007 WL 2021901, at *2 (E.D. Va. July 6, 2007).

Here, defendants argue that the court should reconsider its previous order "to correct a clear error of law or prevent manifest injustice." See ECF No. 287 at 6. In support of their argument, defendants argue that "post-[Ziglar v.] Abassi jurisprudence makes clear that First Amendment access to the courts claims, such as [Pronin]'s claim here, arise in a new context" and cite to various cases that have "found that [access-to-courts] claims present a new context and that the court should decline to allow a Bivens remedy." Id. at 5–6. However, the court's previous order is consistent with that jurisprudence. Indeed, the court found that Pronin's access-to-courts claim does present a new context. See ECF No. 223 at 14 (determining "that [Pronin]'s Bivens claim presents a new context"). Therefore, defendants are paradoxically asking this court to reconsider a part of its decision with which defendants seem to agree. The only other issue with which defendants may be seeking reconsideration is the court's consideration of the "special factors counselling hesitation," which ultimately led the court to determine that Pronin could seek a Bivens remedy. However, the court has already carefully considered these factors, see ECF No. 223 at 9–14, and defendants have not articulated how the court erred in its analysis. Defendants simply cite to various district court cases and one Ninth Circuit opinion, none of which are binding on this court. Therefore, the court denies defendants' renewed motion to dismiss.

At the hearing on the motions, counsel for Pronin stated that if the court denied the renewed motion to dismiss and Pronin's case continued, then Pronin planned to withdraw his motion to unfreeze his funds. Pursuant to this representation, because the court denies the renewed motion to dismiss, the court finds moot Pronin's motion to unfreeze his funds.

## IV. CONCLUSION

For the reasons set forth above, the court denies the renewed motion to dismiss and finds moot the motion to unfreeze funds.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 29, 2019
Charleston, South Carolina**